In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3002

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL L. CAMPBELL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 09 CR 20025—**Michael P. McCuskey**, *Chief Judge.*

ARGUED MAY 11, 2011—DECIDED SEPTEMBER 26, 2011

Before ROVNER and HAMILTON, *Circuit Judges*, and
LEFKOW, *District Judge.*[*]

ROVNER, *Circuit Judge*. Michael L. Campbell was con-
victed in May 2010 of two counts of distribution of crack
cocaine—Count 1 involving the distribution of five or
more grams of crack cocaine on April 3, 2008, and Count 2

[*] The Honorable Joan Humphrey Lefkow, District Judge for
the Northern District of Illinois, is sitting by designation.

encompassing the distribution of 50 or more grams of crack cocaine on August 25, 2008. Under the statute of conviction, Campbell faced a statutory minimum sentence of 10 years' imprisonment on Count 1, and a statutory minimum of 20 years on Count 2. The court imposed the statutory minimum on both counts, to be served concurrently. Seventeen days before he was sentenced, the Fair Sentencing Act of 2010 was signed into law. That Act, if applied to Campbell's convictions, would have lowered the mandatory minimum sentence applicable to Count 2, and have eliminated any mandatory minimum sentence on Count 1.

Campbell appeals the conviction and sentence on two grounds. First, he alleges that the district court improperly denied him the right to represent himself at trial in violation of the Sixth Amendment. Because the violation of that right is a structural error not subject to harmless error inquiry, he argues that the alleged violation entitles him to a new trial. *See McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984) (denial of right to self-representation not amenable to "harmless error" analysis). In addition, he argues that his sentence should be vacated because the district court should have applied the Fair Sentencing Act with its lower mandatory minimums.

## I.

The sentencing issue can be disposed of immediately, because we have rejected precisely this argument. In *United States v. Fisher*, 635 F.3d 336, 340 (7th Cir. 2011), we

held that the Fair Sentencing Act (the Act) does not apply retroactively to conduct that occurred prior to the Act. *Fisher* held that the relevant date for determining whether the Act applies is the date of the criminal conduct not the date of sentencing. *Id.*

Recently, the United State government reversed its position on the matter, and it now maintains that the law requires application of the new mandatory minimum sentences to all sentencings that occur on or after August 3, 2010, regardless of when the offense conduct occurred. Therefore, the government and Campbell are in agreement in this appeal. There is a split in the circuits on the matter, and our circuit recently divided evenly as to whether to reconsider the holding in *Fisher*. *See United States v. Holcomb,* ___ F.3d ___, 2011 WL 3795170 (7th Cir. 2011). Because a majority did not vote to rehear it, *Fisher* is controlling in this circuit unless and until the Supreme Court decides otherwise. Accordingly, because the criminal conduct, and indeed even the conviction, occurred prior to the Act, that Act is inapplicable to Campbell's case and there is no basis to revisit the district court's sentencing determination.

II.

We turn, then, to the Sixth Amendment challenge. Campbell maintains that his request to represent himself was ignored by the district court, and that the failure to accord him that right violated the Sixth Amendment. The request was made in a letter on March 19. Because it was made prior to trial, the timeliness of the request

is not an issue. *See, e.g., United States v. Johnson*, 223 F.3d 665, 668 (7th Cir. 2000) (a motion for self-representation is timely if made before the jury was empaneled); *United States v. Oakey*, 853 F.2d 551, 553 (7th Cir. 1988) (request to proceed pro se must be made in a timely manner).

A.

The March 19 letter was one of a number of letters that Campbell sent pro se to the district court judge detailing his concerns with his criminal case. On November 26, 2009, Campbell sent a letter to the court expressing concerns that his attorney, Assistant Federal Defender John Taylor, was forcing him to go to trial too soon, and asking for a continuance of his trial in order to explore a possible plea agreement. The court held a hearing on January 11 to discuss that pro se request, at which time Taylor moved to continue the trial. At Taylor's request, the case was set for a status hearing on March 18. At that hearing, Taylor informed the court that Campbell had rejected the government's request for him to cooperate in return for the possibility of a lower sentence, and that a trial date should be set. The court then set the trial for May 10.

The next day, on March 19, Campbell again sent a letter to the court complaining of Taylor's representation. In that letter, Campbell expressed concern that he was not ready to proceed to trial, and sought a continuance. He concluded the letter by stating:

> Your honor I am asking that John Taylor be removed from my case. I am requesting that you appoint another lawyer to complete the process. If not I would like to proceed pro se.

The court, in a letter dated March 29, construed Campbell's request as a motion for substitution of counsel and indicated that it would be considered at a hearing on April 28. Campbell sent another letter to the court on April 11. That letter again sought a continuance to allow him to consider a proposed plea agreement, but did not include any request for substitution of counsel or to proceed pro se.

The court then held the hearing on April 28, but began by considering Campbell's motion for a continuance. Questioned as to the basis for his continuance request, Campbell replied that he needed more time to review CDs that had been supplied by the government. The court then engaged in the following colloquy with Campbell:

> THE COURT: What's it a CD of, Ms. Coleman?
>
> AUSA: Jail conversations.
>
> THE COURT: Okay.
>
> AUSA: Phone call conversations.
>
> THE COURT: Okay. so it's something you would have participated in. So it wouldn't be unknown to you. It wouldn't be a surprise to you, right?
>
> MR. CAMPBELL: Well, it's not a surprise that they have a recording . . .
>
> THE COURT: Okay.

MR. CAMPBELL: —from the, from the jail. But being that she introduced it on the 18th and I wasn't afforded the time to go over the full CD, which she's saying that it's incriminating statements on there, I want to be able to go over the full CD. That way I can get my, you know, my witnesses together and—

THE COURT: *Well, you're not going to try the case yourself, are you?*

MR. CAMPBELL: *Oh, no.*

THE COURT: Okay.

MR. CAMPBELL: But I just want to be able to, to listen to the CD and see who's all on the CD. That way, I can inform the people that's on the CD of the situation. That way I can have these witnesses subpoenaed on my behalf at trial.

THE COURT: Okay. Anything further?

MR. CAMPBELL: No.

The government seizes upon that colloquy as evidence that Campbell abandoned his request to represent himself, and the district court apparently was of the same mind. At the close of the hearing, the court engaged in the following exchange with Taylor regarding Campbell's request to represent himself:

THE COURT: Anything further, Mr. Taylor?

MR. TAYLOR: Your Honor, in an exercise of abundant caution and most importantly to protect my client, as I understand the record, based on the fact my client told Your Honor he does not wish to represent

himself at trial, that that pro se motion has been withdrawn. And I just think—

THE COURT: Yeah. Well he said he didn't want to proceed to represent himself, so I didn't go into a colloquy.

MR. TAYLOR: Right.

THE COURT: So I would assume it's moot; and, of course, the motion to continue has been denied. So absolutely you continue to represent Michael Campbell, and we will have Mr. Campbell back here in appropriate civil - - appropriate civilian clothing at 9:00 on Monday, May 10th, to proceed to jury trial that week.

Campbell's argument on appeal is that he explicitly requested to represent himself if the court was unwilling to appoint another attorney to represent him, and that the court never engaged in any colloquy determining whether that decision to proceed pro se was made knowingly and voluntarily. Campbell asserts that in ignoring the request, the court denied him that right to represent himself at trial. Campbell further argues that in the course of denying his motion for a continuance at the April 28 hearing, the court made clear to Mr. Campbell that he had no right to be heard personally because he was represented by counsel:

THE COURT: Very good. Mr. Campbell, I've heard your pro se motion [to continue], which most federal judges would have struck from the record as soon as it was filed because you're represented by

counsel. However, I was a criminal defense lawyer, not a prosecutor; and, therefore, I have afforded you the opportunity to be heard, which you had absolutely no right to be heard under federal law, but I gave you that opportunity because I was interested in the nature of your letter. But the nature of your letter is absolutely no reason for a continuance whatsoever in this case, and it's denied for all the reasons that we've stated this morning.

## B.

It is well-settled that the Sixth Amendment protects a person's right to represent herself, as well as providing the right to the representation of counsel. *Indiana v. Edwards*, 554 U.S. 164, 170 (2008); *Faretta v. California*, 422 U.S. 806, 807 (2008); *United States v. Oakey*, 853 F.2d 551, 553 (7th Cir. 1988). Those rights are mutually exclusive, in that in order to assert the right to represent oneself, the defendant must waive the right to counsel. *United States v. Stubbs*, 281 F.3d 109, 116 (3d Cir. 2002); *Oakey*, 853 F.2d at 553; *Tuitt v. Fair*, 822 F.2d 166, 174 (1st Cir. 1987). Because the assistance of counsel is a critical component of an effective defense, courts will indulge every reasonable presumption against the waiver of counsel. *United States v. Miles*, 572 F.3d 832, 836-37 (10th Cir. 2009); *Buhl v. Cooksey*, 233 F.3d 783, 790 (3d Cir. 2000). Any waiver of that right to counsel must be unequivocal. *Oakey*, 853 F.2d at 553; *Miles*, 572 F.3d at 836.

The requirement that the demand to proceed pro se be unequivocal has a number of purposes. First, it ensures

that a defendant will not be deprived of counsel merely based on "'occasional musings on the benefits of self-representation.'" *Buhl*, 233 F.3d at 792, quoting *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000). Because the two rights are in conflict "the nature of the two rights make it reasonable to favor the right to counsel which, if denied, leaves the average defendant helpless." *Tuitt v. Fair*, 822 F.2d 166, 174 (1st Cir. 1987). In addition, the requirement that a waiver of counsel be unequivocal is necessary lest a defendant attempt to "play one constitutional right against another," *Id.* At 175. An ambiguous waiver could provide a convicted criminal with a tool to overturn a verdict after trial, by asserting that his or her Sixth Amendment rights had been violated regardless of how the court ruled on the waiver. *Id.*; *Miles*, 572 F.3d at 836. To avoid that situation, courts have required that "[a]n 'unequivocal' demand to proceed pro se should be, at the very least, sufficiently clear that if it is granted the defendant should not be able to turn about and urge that he was improperly denied counsel. . . ." *Tuitt,* 822 F.2d at 175; see also *Miles*, 572 F.3d at 836.

Applying those principles to the facts before us, it is apparent that Campbell was not denied his Sixth Amendment right to represent himself. His initial request in the March 19 letter was unequivocal though conditional. He requested that Taylor be removed from his case, and requested the appointment of another lawyer. He then stated that if another lawyer would not be appointed, he would like to proceed pro se. That is sufficient to at least raise the issue of self-

representation. At that point, the district court should have engaged in a colloquy to address that request. *See United States v. Todd*, 424 F.3d 525, 531 (7th Cir. 2005). The questioning that did occur regarding the matter was insufficient to elicit the relevant information. The only question regarding whether Campbell indeed desired to proceed without the assistance of counsel was a leading question asked by the judge in the context of a hearing regarding a motion to continue the case. In determining whether Campbell needed additional time to review evidence provided by the government, the court interrupted the defendant as he explained his need for time and queried "Well, you're not going to try the case yourself are you?" Campbell responded in the negative to that leading question, and continued with his explanation. A leading question such as that one—raised in the context of an unrelated issue— is an inherently unreliable indicator of Campbell's true state of mind. If that is all that we had before us, Campbell would have a strong argument that he was denied his Sixth Amendment right to represent himself.

But the determination as to whether a defendant desires to represent himself is not a static one. We do not merely consider the time of the initial request in determining whether there is an unequivocal desire to represent himself. Instead, we must look to Campbell's subsequent conduct as well in the course of the proceedings. *See McKaskle v. Wiggins*, 465 U.S. 168, 182-83 (1984); *Johnson*, 223 F.3d at 668; *Brown v. Wainwright*, 665 F.2d 607, 610-11 (5th Cir. 1982). As we have noted, the right to self-representation can be waived expressly or

it can be waived by implication where the defendant's conduct establishes that he acquiesced in the use of counsel and the relinquishment of his right to self-representation. *Johnson*, 223 F.3d at 668-69. It is here that it becomes apparent that Campbell did not in fact seek to waive the assistance of counsel and assert his right to self-representation.

As was mentioned, Campbell responded to the court's question at the hearing by indicating that he did not intend to represent himself. Although the context of the question would cause us to question the validity of the response, at a minimum it casts some doubt as to whether Campbell sought to waive counsel. In a discussion with Campbell's counsel at the close of the hearing, the court made it clear that it interpreted Campbell's response as indicating that he did not want to represent himself. Although present during that discussion, Campbell said nothing to rebut that characterization. In fact, Campbell never raised the matter again. The initial answer, followed by the silence and the subsequent acceptance of representation throughout the trial, indicate that Campbell in fact desired to retain counsel despite his earlier misgivings about Taylor. There is no unequivocal waiver of the right to counsel or unequivocal demand to proceed pro se, and therefore no Sixth Amendment violation of the right to self-representation. Accordingly, the decision of the district court is AFFIRMED.