In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 14-3407

RASHAAD A. IMANI,

*Petitioner-Appellant,*

*v.*

WILLIAM POLLARD,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin
No. 11-cv-677-wmc — **William M. Conley**, *Chief Judge.*

———————————

ARGUED JANUARY 13, 2016 — DECIDED JUNE 22, 2016

———————————

Before WOOD, *Chief Judge*, and BAUER and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. The Sixth Amendment guarantees a mentally competent defendant the right to represent himself in a criminal trial, no matter how foolish that choice may seem. *Faretta v. California*, 422 U.S. 806 (1975). This constitutional right "exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least

occasionally, be the accused's best possible defense." *McKaskle v. Wiggins*, 465 U.S. 168, 176–77 (1984). A judge may not deny a competent defendant's timely invocation of his right. See *Faretta*, 422 U.S. at 835–36.

Petitioner-appellant Rashaad Imani tried to exercise his right to represent himself in a criminal prosecution in the Wisconsin state courts. The trial judge prevented him from doing so. Imani was convicted at a trial in which he was represented by a lawyer he did not want. A divided Wisconsin Supreme Court affirmed his conviction, finding that Imani was not competent to represent himself and had not made a sufficiently knowing and voluntary choice to do so. That decision was an error. Further, it was contrary to and an unreasonable application of clearly established federal law as determined by United States Supreme Court decisions, thus satisfying the stringent standard for federal habeas corpus relief under 28 U.S.C. § 2254(d)(1). Imani is entitled to a writ of habeas corpus ordering either his prompt release or a new trial.

I.  *Factual and Procedural Background*

In 2006, petitioner Rashaad Imani and his cousin, Raziga Imani, were charged with robbing a bank in Menomonee Falls, Wisconsin. (We refer to petitioner Rashaad Imani simply as "Imani.") While fleeing the police after the robbery, a robber forced a driver to give him a ride. Police later recovered Imani's fingerprints from the car's door handle, and the driver identified Imani, first in a photo array and later in court at a preliminary hearing. Prosecutors charged Imani with armed robbery and possession of a firearm by a felon. Raziga Imani was also charged. Shortly before trial he pled guilty, and he then testified against Imani at trial.

Before trial, Imani's lawyer moved to suppress the driver's identification, arguing that it had been tainted by a television news report about the robbery. After the court denied the motion, Imani invoked his right to represent himself. He said he was not satisfied with his lawyer, who had not shown a recording of the television news report to the driver at the suppression hearing. Imani said his lawyer's representation of him at the hearing gave him doubts about the lawyer's ability to represent him "well enough" at trial. Imani also said he was not satisfied with his lawyer's efforts to investigate the fingerprint evidence against him. Imani acknowledged that he might not be as "eloquent in speech" as his lawyer, but he said he had "been dealing with this case for over a year now" and knew how to express himself well. Imani added, "ain't nobody going to represent myself better than me."

After Imani explained his reasons for choosing to represent himself, the judge asked: "What do you want to say to me to convince me that you're competent to represent yourself?" Imani said he had been "working on this for 13 months," but the judge dismissed Imani's work on his case as "irrelevant and unconvincing." The judge then directed Imani to focus on his "formal education." Imani said that he had a tenth-grade education, that he read at a college level, and that he had appeared in court for at least five previous criminal matters, although he was represented by lawyers in those cases.

The judge said Imani could not represent himself, treating the matter as a request that required the judge's permission. The judge said that Imani did not have a "sufficiently rational basis" to justify his decision. He described Imani's decision as "a flippant short term or immature decision" that should not

be given effect, and he described Imani's reasons for wanting to represent himself as "episodic driven," stemming from his loss of the suppression motion. The judge also cited the need to keep the trial on schedule and the increased difficulty of preparing for what he then expected to be a two-defendant trial. At that time, however, there were still four weeks until the trial was scheduled to begin, and Imani said that he had no problem with the trial date. The judge said that, upon a further request, he would reconsider Imani's motion. There was no further request.

The case proceeded to trial. Imani was represented by counsel and was found guilty. On direct appeal, the Wisconsin Court of Appeals reversed the conviction and ordered a new trial because Imani had not been allowed to represent himself. *State v. Imani*, 771 N.W.2d 379 (Wis. App. 2009). The appellate court's opinion focused on the trial court's failure to conduct the full colloquy required by *State v. Klessig*, 564 N.W.2d 716, 721 (Wis. 1997). The state petitioned for review by the Wisconsin Supreme Court.

The Wisconsin Supreme Court reversed the appellate court and affirmed Imani's conviction. The Supreme Court found that while the trial court did not conduct the full colloquy required by *Klessig*, the trial court had properly determined that Imani "did not make a deliberate choice to proceed without counsel" and "was unaware of the difficulties and disadvantages of self-representation." *State v. Imani*, 786 N.W.2d 40, 44–45 (Wis. 2010). The Wisconsin Supreme Court also concluded that "the circuit court's determination that Imani was not competent to proceed pro se is supported by the facts in the record." *Id.* at 45. The court did not identify any mental illness or specific disability, and none is apparent

from the trial court record. See *id.* at 54. Based on the conclusion that Imani could not have validly waived his right to counsel, the Wisconsin Supreme Court held that the trial court was required to refuse his attempt at representing himself.

Imani then filed a petition in federal district court for a writ of habeas corpus under 28 U.S.C. § 2254. The district court concluded that the state court finding that Imani was not competent to represent himself "would appear to violate the right to self-representation found in *Faretta*." *Imani v. Pollard*, 2014 WL 4828876, *13 (W.D. Wis. Sept. 29, 2014). "If anything," the court wrote, "the record indicates that petitioner was both articulate and capable of expressing arguments concerning his defense." *Id*. at *14. The district court denied Imani's petition, however, concluding that the state trial court did not contradict *Faretta* in finding that Imani's invocation of his right to represent himself was not knowing and voluntary. The district court granted a certificate of appealability under 28 U.S.C. § 2253.

II. *Analysis*

Where state courts have rejected a prisoner's federal constitutional claim on the merits, a federal court may not grant a writ of habeas corpus on that claim unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" 28 U.S.C. § 2254(d)(1). This standard gives state courts "deference and latitude." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). To obtain federal relief, a petitioner must show that the state court decision was not just wrong, but wrong to the extent that no "fairminded jurists could disagree on the correctness of the state court's decision." *Id.* (internal quotation marks omitted).

A state court decision is contrary to clearly established Supreme Court precedent, and thus habeas relief is warranted, "if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005).

Even under this demanding standard, Imani is entitled to federal habeas corpus relief. The Wisconsin Supreme Court decision was flatly contrary to *Faretta* and its progeny in three distinct ways. First, the state court in effect required Imani to persuade the trial judge that he was making a knowing and voluntary decision to waive the right to counsel when it was actually the judge's job to make sure that Imani's waiver would be knowing and voluntary. Second, the state court required Imani to persuade the trial judge that he had a good reason to choose self-representation. Under *Faretta*, however, a defendant's reason for choosing to represent himself is immaterial. Defending *pro se* will almost always be foolish, but the defendant has the right to make that choice, for better or worse. Third, the state court imposed a competence standard much more demanding than *Faretta* and its progeny allow, as if the issue were whether Imani was an experienced criminal defense lawyer. Imani's education and communication abilities are materially indistinguishable from those in *Faretta*, and the Wisconsin courts identified no mental illness or impairment that might have rendered Imani incompetent as allowed by *Indiana v. Edwards*, 554 U.S. 164 (2008). We explain these errors in turn.

A. *Knowing and Voluntary Waiver*

By invoking his *Faretta* right, an accused simultaneously exercises his right to represent himself and waives his right to

counsel. *Faretta* is therefore challenging for trial courts to administer. Self-representation is a Sixth Amendment right, and a trial court may not deny its timely exercise by a competent defendant. *Faretta*, 422 U.S. at 834–36. On the other hand, if the waiver of the right to counsel is not knowing and voluntary, the conviction will not stand. Before allowing a defendant to proceed without counsel, a trial court therefore has the duty to warn a defendant about what he is getting himself into, but the court cannot just deny the defendant the right he has invoked. The imperative of a knowing and voluntary choice is a requirement for valid waiver of the right to counsel; it is not a condition that must be fulfilled before an accused may be "allowed" to exercise his Sixth Amendment right to represent himself.

Supreme Court decisions make clear both a trial court's duty to warn but also the narrow limits on its power to prevent exercise of the right of self-representation. The Court acknowledged in *Faretta* that "the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel." 422 U.S. at 832. Because of that, a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 835 (internal quotation marks omitted); see also *Iowa v. Tovar*, 541 U.S. 77, 88–89 (2004) (noting that "before a defendant may be allowed to proceed *pro se*, he must be warned specifically of the hazards ahead").

Here, the Wisconsin Supreme Court transformed the requirement of knowing and voluntary waiver from a duty of the trial judge into a burden on the accused. If a trial court's inquiry does not demonstrate that an accused's choice was knowing and voluntary, the court held, "the court cannot permit the defendant to represent himself." *Imani*, 786 N.W.2d at 50. The effect of that holding was to deny Imani his constitutional right because the trial judge failed to conduct a full colloquy to establish knowing and voluntary waiver of the right to counsel. In dissent, Justice Crooks correctly explained that the majority erred by shifting "the responsibility to the defendant" to demonstrate his knowing and voluntary waiver. *Id.* at 59.

Putting the burden on the defendant to inform himself of the dangers of self-representation is flatly contrary to *Faretta*. Such a burden would require legally uninformed defendants to inform themselves regarding the "dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. *Faretta* put that burden on the court, and by reversing that burden, the Wisconsin Supreme Court's decision was contrary to *Faretta*.

B.  *Reason for Invoking Right to Self-Representation*

The state trial court also denied Imani his right to represent himself because, it concluded, he was making a decision without a "sufficiently rational basis," driven by his momentary frustration with counsel at the suppression hearing. The Wisconsin Supreme Court agreed that Imani had not made a "deliberate" choice to represent himself. *Imani*, 786 N.W.2d at 51. But denying a defendant his Sixth Amendment right to proceed *pro se* because his choice is foolish or rash is also contrary to *Faretta*.

*Faretta* recognized a defendant's right to represent himself even though it is "undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." 422 U.S. at 834. The Supreme Court answered this concern by making clear that the defendant himself is free to make this choice: "The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Id.*, quoting *Illinois v. Allen*, 397 U.S. 337, 350–51 (1970) (Brennan, J., concurring).

Only in rare cases will a trial judge view a defendant's choice to represent himself as anything other than foolish or rash. A judge does not violate a defendant's Sixth Amendment rights by explaining the risks to the defendant in detail and then giving him time to think it over before the defendant (but not the judge) makes the final decision. Wisconsin's required colloquy serves precisely this purpose. See *State v. Klessig*, 564 N.W.2d 716, 721 (Wis. 1997). But in the end a competent defendant has a constitutional right to represent himself even if the judge thinks the defendant has no good reason to do so. It is the trial judge's job to make sure the defendant makes that choice with open eyes. Nothing in *Faretta* or its progeny allows the judge to require the defendant to prove he is making the choice for a reason the judge finds satisfactory. See *Faretta*, 422 U.S. at 834–35. The state courts denied Imani his Sixth Amendment rights by preventing him from representing himself on the ground that he did not persuade the trial judge

that he had a good reason to do so. That reasoning was simply contrary to *Faretta*.[1]

C.  *Competence*

The Wisconsin Supreme Court's holding that Imani was not competent to represent himself at trial was also contrary to *Faretta*. There was no relevant difference between Faretta's and Imani's competence to represent themselves at trial. Faretta had a high school education, was literate, and was able to understand the trial judge's warnings about what he was getting himself into. *Faretta*, 422 U.S. at 807, 835. Imani had a tenth-grade education and asserted that he reads at a college level. The transcript shows that Imani was able to express himself well and to understand what the judge said to him.

The trial judge actually held Imani to a standard that required him to have prior criminal trial experience. In denying Imani's invocation of his right, the trial judge said: "So while

---

[1] After denying Imani's invocation of his right, the trial judge said, "Now, I'm willing to hear the motion again. It may at some point be permitted, but it is going to have to be in a context where I know the trial date is not going to be jeopardized." The state argues that Imani's failure to act on the trial court's invitation to renew his motion indicates that his initial decision was rash and hasty. The decision might have been rash, hasty, or foolish as a matter of fact, but that makes no difference as a matter of law. A court may not deny a defendant his right to represent himself because the choice is rash, hasty, or foolish. In the end, the choice is the defendant's, no matter how foolish it is. *Faretta*, 422 U.S. at 834. The trial judge's offer to consider a renewed motion in the future, and perhaps to grant it "in a context where I know the trial date is not going to be jeopardized," did nothing to cure the judge's error in denying the motion. A denial is a denial, even with an offer to reconsider in certain circumstances. Nothing in *Faretta* or its progeny indicates a trial court may require a defendant to repeat his attempts to invoke his right of self-representation.

[Imani] has some observational experience with the criminal court system, it hasn't been presented to me that he has any experience actually conducing proceedings like a criminal court trial."

Imani obviously did not have such experience, but the court was applying the wrong legal standard, flatly contrary to *Faretta*, where the Court explained: "We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the [state law] provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." 422 U.S. at 836.

The Wisconsin Supreme Court treated the issue of competence as one of fact, see *Imani*, 786 N.W.2d at 53–54, but the problem here was not factual but legal. By affirming the trial court's finding that Imani was not competent to represent himself, the Wisconsin Supreme Court's decision raised the standard for competence so high that its decision was again simply contrary to *Faretta*.

There is a narrow class of cases in which a defendant may not be competent to represent himself at trial, but there is no evidence of such circumstances here. The United States Supreme Court has explained that a "right of self-representation at trial will not affirm the dignity of a defendant who lacks the mental capacity to conduct his defense without the assistance of counsel." *Indiana v. Edwards*, 554 U.S. 164, 176 (2008) (internal quotation marks omitted). A state may therefore deny defendants the right to represent themselves where they suffer from "severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at

178. There is no indication that Imani suffered from mental illness or mental impairment. The record shows that Imani was articulate and able to carry on reasoned conversations with the judge. One cannot stretch *Edwards* to hold that it was permissible to find Imani incompetent to represent himself.

It is also true that in *Godinez v. Moran*, 509 U.S. 389, 402 (1993), the Supreme Court wrote that states "are free to adopt competency standards that are more elaborate" than the minimum standard of competence required to choose to represent oneself. But that flexibility does not authorize states to adopt competence standards without limit. While the statement in *Godinez* gave states some latitude in shaping their minimum competence standards, *Faretta* and *Edwards* set the relevant benchmarks. See *Edwards*, 554 U.S. at 173 ("*Godinez* involved a State that sought to *permit* a gray-area defendant to represent himself. … But that holding simply does not tell a state whether it may *deny* a gray-area defendant the right to represent himself—the matter at issue here.") (emphases in original). Because Imani's abilities were close enough to Faretta's to be indistinguishable, the Wisconsin courts unreasonably applied *Faretta* in denying Imani his right to represent himself.[2]

Finally, the Wisconsin Supreme Court's conclusion that the trial court did not err by taking "into consideration the trial schedule when determining whether Imani was competent to proceed pro se" was also contrary to *Faretta*. See *Imani*, 786

---

[2] The standard of competence applied by the Wisconsin courts here was much more demanding, and the conflict with *Faretta* much clearer, than in *Brooks v. McCaughtry*, 380 F.3d 1009, 1011 (7th Cir. 2004), where we affirmed denial of self-representation to a defendant who had exhibited "wild behavior and incomprehensible outbursts during the trial."

N.W.2d at 54. Where a defendant invokes his right so late as to delay a trial or engages in "serious and obstructionist misconduct," a judge may deny the exercise of the right of self-representation. *Faretta*, 422 U.S. at 834–35 & n.46. But a late request would have no bearing on competence. Under *Faretta*, legal skill and experience are not required to be competent to represent oneself. *Id.* at 835. And in any case, Imani made his request four weeks before trial and said he would not need any extra time to prepare. *Faretta* held it was a constitutional error to deny request made "weeks before trial." *Id*. The judge would have been entitled to hold Imani to that assurance if he had later asked for a delay, but he could not deny Imani his Sixth Amendment right to represent himself on this basis.

Imani's conviction cannot stand because the Wisconsin state courts' denial of his Sixth Amendment right to represent himself was contrary to and an unreasonable application of binding Supreme Court precedent. The denial of that right is not subject to harmless error analysis. *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984). The district court's judgment is REVERSED and the case is REMANDED with instructions to grant the writ of habeas corpus ordering that Imani be either released or retried promptly.