In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1229

JAMES FREEMAN,

*Petitioner-Appellant*,

*v.*

GUY PIERCE,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 4994 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED SEPTEMBER 28, 2017 — DECIDED DECEMBER 27, 2017

Before BAUER, MANION, and HAMILTON, *Circuit Judges*.

BAUER, *Circuit Judge.* For over forty years, the Supreme Court has recognized that the Sixth Amendment implicitly entails a right to self-representation. *Faretta v. California*, 422 U.S. 806, 819 (1975). When Petitioner James Freeman, charged in Illinois state court with kidnapping and murder, filed a motion to proceed pro se, the judge denied his request and

found that he did not possess the necessary experience and abilities to represent himself. Freeman ultimately proceeded to trial with a lawyer and was convicted.

While acknowledging that the right to self-representation cannot be denied based on limited education and legal abilities, the Illinois Appellate Court affirmed the denial of Freeman's right on the ground that his request was not unequivocal. The trial court's denial of Freeman's self-representation right, and the appellate court's affirmance of that decision, were both contrary to, and unreasonable applications of *Faretta*. Freeman petitioned this Court for a writ of habeas corpus, and since he has satisfied the stringent standards for habeas relief under 28 U.S.C. § 2254(d)(1), he is entitled to the issuance of a writ.

## I. BACKGROUND

### A. Freeman's Initial Request to Proceed Pro Se

On February 18, 2004, Freeman was indicted in Illinois in connection with the kidnapping and murder of a drug dealer, Robert Green. Following his arraignment, the court appointed public defender Kevin Foster as Freeman's counsel. In June, 2004, the State announced that it intended to seek the death penalty. Shortly thereafter, Freeman orally requested to proceed pro se. The trial court granted Freeman's request, and Foster withdrew as Freeman's counsel.

The court held a status hearing on November 3, 2006, and invited Foster to attend. At the hearing, the court asked Freeman whether he intended to continue representing himself. The court repeatedly reminded Freeman of the perils of proceeding without a lawyer, particularly since the State

was seeking the death penalty. Freeman remained firm in his desire to proceed pro se despite the court's strong encouragement to have Foster reappointed.

The court then moved onto other matters and set a pretrial conference date in two months. However, Freeman informed the judge that a two-month gap between his court appearances would result in him being transferred to a jail much farther away. In order to avoid the transfer and to set a shorter status date, Freeman agreed to have counsel reappointed. Freeman asked whether Foster would be reappointed, and told the court that he "waived [Foster] for a reason." The court said the Public Defender's Office would determine which particular public defender would be assigned. Ultimately, Foster was reappointed as Freeman's counsel at the next status date.

### B. Freeman's Motion to Proceed Pro Se and for Standby Counsel

On September 20, 2007, Freeman filed a motion titled "Motion to Proceed Pro Se and for Standby Counsel." In the motion, Freeman again stated that he wished to proceed pro se due to a "conflict of interest" with Foster, and that he did not believe he would "receive the full effective assistance of counsel from [Foster]." Twice in the motion, Freeman stated that he did not wish to be represented by Foster, or any other member of the Public Defender's Office. Freeman also asked the court to appoint two standby counsel. The motion concluded with a request that the court "grant this motion for leave to proceed Pro Se with standby counsel and accept this waiver as being knowingly, intelligently and voluntarily relinquished."

Freeman's motion was taken up on October 19, 2007. The court indicated for the record that before it was "a pro se motion to proceed pro se and for standby counsel." After Freeman acknowledged that he filed the motion, the court began questioning Freeman about his request:

The Court:   Mr. Freeman, you are not saying why it is that you say you feel Mr. Foster cannot give you effective assistance of counsel in your motion.

Freeman:     I explained it in there.

The Court:   No. You say that I believe that prejudice [will] result in the outcome with this lawyer representing you and that you won't receive the full effect of assistance of counsel from this attorney. That's a conclusion sir.

             What facts are you presenting to me that would lead you to conclude that?

Freeman:     I mean, based on me and this attorney communication and due to the representation that—since he been on my case, it haven't been—like when he comes and see me, we always arguing. You know he tell me that I think I am too smart. He kind of downgrade me. He shows signs of like this case can't be won and all that. I don't believe that he will put his full effort into seeing that I receive a fair trial.

The court denied Freeman's request to proceed pro se. The court explained that Freeman had "about an eighth grade education, that [he] left school after eighth grade." Additionally, the court noted the circumstances of Freeman's arrest, and stated that he "did not effectively raise and exercise [his] constitutional rights." The court continued:

> Now you are asking, after I have ruled on the motion to suppress statements, that you be allowed to go pro se again and that you have standby counsel. You don't have an absolute right to represent yourself. Your right to represent yourself is constrained by certain things.

> I have already advised you about the possible penalties. I look at what it is you say for your reasons in representing yourself, and I don't find that you have the necessary experience or abilities, based on what I have learned since I reappointed Mr. Foster, for you to represent yourself.

The court reminded Freeman that disagreement with Foster was not ineffective assistance of counsel, and that "[n]o one guarantees that you will have a lawyer that you get along with." However, the court made clear to Freeman that its decision on his ability to represent himself was final:

> I find that your motion to proceed pro se is not warranted under this situation. I will not let you proceed pro se any further. I have given you an opportunity to do that once. You have asked to have counsel reappointed.

> You have not given me an additional reason why you should proceed pro se. Based on what you told me, based on this motion, I am going to deny this motion …

Freeman objected by stating that he was "not going to trial with this attorney." After further objections were ignored by the court, Freeman walked out of the courtroom before the close of the hearing.

## C. Trial and Post-Conviction Procedural History

On November 20, 2007, a month after Freeman's motion to proceed pro se was denied, public defender Bernard Sarley filed an appearance on behalf of Freeman. Freeman made no objection to Sarley's representation, and never made another request to proceed pro se.

Sarley filed a motion to dismiss the indictment, which caused the State to re-indict Freeman on February 22, 2008. Sarley represented Freeman throughout the trial, and ultimately, a jury found Freeman guilty of first-degree murder and kidnapping in February, 2009. The court sentenced Freeman to 60 years in prison.

Freeman appealed on the grounds that he was denied his Sixth Amendment right to self-representation. On November 18, 2011, the Illinois Appellate Court affirmed the conviction, and found no error in the trial court's denial of Freeman's motion to proceed pro se because Freeman "did not unequivocally invoke his right to self-representation." *People v. Freeman*, No. 1-09-1148, 2011 WL 9688910, at *7 (Ill. App. Ct.

Nov. 18, 2011). The Illinois Supreme Court denied leave to appeal.

Having exhausted his state court post-conviction remedies, on June 3, 2015, Freeman filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, raising ten claims, including that he was denied his Sixth Amendment right to self-representation. The district court concluded that Freeman's self-representation claim was barred under 28 U.S.C. § 2254(d) because the Illinois Appellate Court found he did not unequiv-ocally evoke his right to proceed pro se. The district court also denied the claim on the merits, and did not grant a certificate of appealability.

On December 22, 2016, this Court granted Freeman a certificate of appealability, finding that Freeman had made a substantial showing of the denial of his right to represent himself at trial.

## II. DISCUSSION

We review a district court's denial of a habeas petition *de novo*. *Stechauner v. Smith*, 852 F.3d 708, 714 (7th Cir. 2017). The Antiterrorism and Effective Death Penalty Act (AEDPA) provides that a federal court may only grant habeas relief if the state court's adjudication of a prisoner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if the adjudica-tion "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). This standard is "difficult to meet," and a prisoner is only entitled

to relief if the state court's adjudication of the claim is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011). We apply this standard to the Illinois Appellate Court's decision on direct appeal, as that was the last state court to adjudicate Freeman's self-representation claim on the merits. *Jordan v. Hepp*, 831 F.3d 837, 843 (7th Cir. 2016).

Under § 2254(d)(1), a decision is contrary to Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Tatum v. Foster*, 847 F.3d 459, 464 (7th Cir. 2017) (quoting *Brown v. Payton*, 544 U.S. 133, 141 (2005)). An unreasonable application of Supreme Court precedent "must be objectively unreasonable, not merely incorrect." *Blackmon v. Williams*, 823 F.3d 1088, 1099 (7th Cir. 2016) (citing *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)).

Although the Sixth Amendment to the U.S. Constitution only grants that a defendant shall "have the Assistance of Counsel for his defence," the Supreme Court determined in *Faretta* that the right to self-representation is "necessarily implied by the structure of the Amendment." *Faretta*, 422 U.S. at 819. Accordingly, the Court held that the State may not "constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." *Id.* at 807. This implicit constitutional right to self-representation belongs to all

defendants, so long as they are mentally competent, and can knowingly and intelligently waive the right to counsel. *Id.* at 835.

The Illinois trial court denied Freeman's motion to proceed pro se and for standby counsel, relying on Freeman's lack of education and legal abilities for its ruling. That ruling was contrary to, and an unreasonable application of *Faretta*. The Illinois Appellate Court affirmed the denial of Freeman's right to self-representation, but under a different basis: that Freeman's motion and request was not unequivocal. That decision, too, was contrary to, and an unreasonable application of *Faretta*. The State argues that the appellate court correctly concluded that Freeman's motion was equivocal, but advances another basis for denying the writ: that Freeman acquiesced to representation when Foster was replaced by Sarley as his counsel, and thereby, waived the right to self-representation. Because the appellate court did not make this factual finding, it is due no AEDPA deference, and the State's alternative argument is therefore without merit.

We address each of these three distinct bases for denying Freeman's motion to proceed pro se in turn.

### A. Illinois Trial Court's Denial of Freeman's Motion to Proceed Pro Se Based on his Limited Education and Legal Abilities

*Faretta* made clear that a judge's inquiries into a defendant's "technical legal knowledge" are "not relevant to an assessment of his knowing exercise of the right to defend himself." *Id.* at 836. In Faretta's own case, his lack of higher education and understanding of the law was an improper basis for denying

his request to represent himself. *Id.* at 807, 835 (noting that Faretta had a high school education and was "literate, competent, and understanding").

As the State concedes, the trial court's denial of Freeman's motion to proceed pro se was plainly improper in light of *Faretta*. The trial court specifically relied on Freeman's lack of education and unawareness of his own constitutional rights in finding that he did not possess the "the necessary experience or abilities." Yet, nothing distinguishes Freeman's education and legal abilities from Faretta's, which the Supreme Court found were irrelevant as to whether Faretta could represent himself. So, the trial court's ruling was both contrary to, and an objectively unreasonable application of *Faretta*. *See Tatum*, 847 F.3d at 467–69 (finding denial of self-representation based on tenth-grade education and limited legal knowledge both contrary to, and an unreasonable application of *Faretta*); *Imani v. Pollard*, 826 F.3d 939, 946–47 (7th Cir. 2016) (same).

To the extent the appellate court's affirmance was a conclusion that Freeman could be denied the right to represent himself based on his limited educational and legal abilities, that conclusion was also contrary to *Faretta*. *See Imani*, 826 F.3d at 946. The Illinois Appellate Court acknowledged that denying the right to self-representation based on education, ability or legal knowledge would be improper. *Freeman*, 2011 WL 9688910, at *7. However, the court did not explicitly recognize the trial court's error or find that it was harmless. Instead, the court shifted its analysis to whether or not the request was unequivocal, and therefore, we now evaluate the reasonableness of that analysis.

**B. The Illinois Appellate Court's Holding that Freeman's Motion to Proceed Pro Se was Not Unequivocal**

The Illinois Appellate Court affirmed the denial of Freeman's motion because his "request for self-representation did not constitute an unequivocal invocation of his right to proceed *pro se*." *Freeman*, 2011 WL 9688910, at *7. The appellate court gave three reasons, based on the record, for concluding that Freeman's motion to proceed pro se was not unequivocal: (1) that Freeman took "vacillating positions" on whether to represent himself; (2) that Freeman "also requested standby counsel"; and, (3) that Freeman's motion "was primarily based on his objection to representation by certain counsel, rather than a decision to self-represent." *Freeman*, 2011 WL 9688910, at *7.

This conclusion simply cannot be squared with either *Faretta* or the record. We address each of these reasons for concluding that Freeman's request was equivocal.

**1. Vacillating Positions on Representation**

In order to effectively raise the right to self-representation, the request must be made "clearly and unequivocally." *See Faretta*, 422 U.S. at 835; *see also United States v. Campbell*, 659 F.3d 607, 612 (7th Cir. 2011), *vacated on other grounds*, 568 U.S. 802 (2012). Courts have required a clear and unequivocal request to ensure against a defendant losing his Sixth Amendment right to counsel, as well as to prevent a defendant from using an ambiguous request as a weapon to overturn his conviction on appeal. *Id.*

Nothing in the record indicates Freeman took vacillating positions on his desire to represent himself. Freeman's motion was explicitly titled "Motion to Proceed Pro Se and for Standby Counsel," and in it, Freeman made a definitive request that the court "grant this motion for leave to proceed pro se." Moreover, nothing in the record suggests that the trial court misunderstood Freeman's motion. The record is replete with statements from the trial court indicating that it clearly interpreted Freeman's motion as a request for self-representation: "I have before me a motion to proceed pro se and for standby counsel"; "You don't have an absolute right to represent yourself"; "I don't find that you have the necessary experience or abilities … to represent yourself"; "I find that your motion to proceed pro se is not warranted under this situation."

The Illinois Appellate Court did not elaborate on exactly how Freeman took vacillating positions, but it did reference the fact that Freeman agreed to have the Public Defender's Office reappointed to his case after initially proceeding pro se. However, Freeman's willingness to have Foster reappointed had no bearing on whether his motion to proceed pro se ten months later was unequivocal. *Faretta* forecloses any argument to the contrary, since the Supreme Court found no vacillation or equivocation in Faretta's request for self-representation even though Faretta had previously been appointed counsel. *Faretta*, 422 U.S. at 807 (noting Faretta initially was appointed counsel at his arraignment). A conclusion that Freeman vacillated on representing himself because of prior representation is contrary to, and an unreasonable application of *Faretta*.

### 2.  Request for Stand-By Counsel

A request to proceed pro se that is accompanied by a request to appoint stand-by counsel does not make that request equivocal. In fact, *Faretta* explicitly contemplates that a defendant can both invoke the right to self-representation and request stand-by counsel. The Court in *Faretta* acknowledged that the appointment of stand-by counsel may be necessary "even over objection by the accused … to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta*, 422 U.S. at 834, n. 46; *see McKaskle v. Wiggins*, 465 U.S. 168, 170 (1984) (noting that *Faretta* "held that a trial court may appoint 'standby counsel' to assist the *pro se* defendant in his defense"). The Illinois Appellate Court's reliance on Freeman's request for stand-by counsel in reaching its conclusion of equivocation was contrary to, and an unreasonable application of *Faretta*.

### 3.  Dissatisfaction with Counsel

The State relies primarily on the Illinois Appellate Court's conclusion that Freeman's request was based on his dissatisfaction with Foster. Again, the Illinois Appellate Court did not elaborate on how it reached this conclusion other than stating it was based on the record.

As an initial matter, it was improper for the trial court to require Freeman to justify why he wished to proceed pro se beyond what he had explained in his motion. "It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Faretta*, 422 U.S. at 834. Yet, a defendant's choice to

exercise his right to self-representation "must be honored out of that respect for the individual which is the lifeblood of the law." *Id.* (citation and internal quotation marks omitted). Virtually every time a defendant elects to proceed pro se he is making a foolish choice, but "[n]othing in *Faretta* or its progeny allows the judge to require the defendant to prove he is making the choice for a reason the judge finds satisfactory." *Imani*, 826 F.3d at 945.

Dissatisfaction with counsel does not make a self-representation request equivocal, and again, *Faretta* forecloses such an argument. In that case, Faretta stated that he no longer wished to be represented by the Public Defender's Office in his request to proceed pro se since "he believed that that office was 'very loaded down with … a heavy case load.'" *Faretta*, 422 U.S. at 807. The Court found that Faretta's request was unequivocal despite being primarily based on his dissatisfaction with his public defender. *Id.* at 835. Freeman's request to proceed pro se, like Faretta's, was primarily based on his dissatisfaction with Foster. The right of self-representation would be virtually impossible to invoke if dissatisfaction with counsel meant equivocation since most requests to proceed pro se are premised on precisely those grounds. *See Batchelor v. Cain*, 682 F.3d 400, 408 (5th Cir. 2012).

Moreover, Freeman did not open himself up to equivocation by requesting that Foster be removed or replaced as counsel. *See McGhee v. Dittmann*, 794 F.3d 761, 770 (7th Cir. 2015) ("A request to discharge counsel, without more, ordinarily does not signal a clear desire for self-representation."). Freeman's motion and his statements on the record clearly

reflect that he no longer wanted to be represented by Foster *and* that he wanted to proceed pro se. The Illinois Appellate Court's conclusion that dissatisfaction with Foster made Freeman's request equivocal was contrary to, and an unreasonable application of *Faretta*.

The State acknowledges that Freeman's motion was unequivocal, but argues that Freeman's subsequent conduct after his motion was denied made his request equivocal. In particular, the State suggests that Freeman's failure to re-raise his motion or object to representation by Sarley after he replaced Foster demonstrates that his real motive was to replace Foster with new counsel, not to represent himself.

In *United States v. Campbell*, we noted that a defendant's subsequent conduct is relevant in determining whether a request for self-representation is unequivocal. 659 F.3d at 613. In that case, the defendant wrote a letter to the trial court seeking a continuance that concluded with a request for a new lawyer, or alternatively, to proceed pro se. *Id.* at 610. The trial court construed it as a motion to substitute counsel, and when the court asked the defendant whether he really intended to represent himself, the defendant wavered and said he did not. *Id.* at 610–11. While noting that his initial letter to the trial court was unequivocal, we ultimately found the defendant's request was equivocal since he later indicated that he did not wish to represent himself, which was "followed by the silence and the subsequent acceptance of representation throughout the trial." *Id.* at 613.

But, *Campbell* is materially distinguishable. Our finding of equivocation there was primarily based on the defendant's

wavering position in court on self-representation, followed by subsequent conduct that indicated he did not wish to represent himself. Freeman did not waver as to whether he wanted to represent himself when the trial court addressed his clearly stated motion. In fact, Freeman was so emphatic in his desire to proceed pro se that he left the courtroom before the end of the hearing due to the judge's refusal to grant the motion. Importantly, the trial court in *Campbell* also considered the defendant's request to proceed pro se withdrawn and moot in light of his wavering position. *Id.* at 611. Freeman never withdrew his motion, as the trial court clearly denied it on the merits.

### C. The State's Argument on Appeal that Freeman Acquiesced to Representation by Sarley, and Waived the Right to Self-Representation

On appeal, the State advances a distinct basis from equivocation for denying the writ that is not addressed or found in the Illinois Appellate Court's opinion. According to the State under this alternative argument, Freeman acquiesced to representation by Sarley by not re-raising his motion or objecting to Sarley's representation once he replaced Foster, and as a result, Freeman waived the right to self-representation.

Whether a defendant waived his right to self-representation through acquiescence is a question of fact. *Cain v. Peters*, 972 F.2d 748, 749 (7th Cir. 1992). Because the Illinois Appellate Court did not make such a factual finding of acquiescence or waiver, we afford no AEPDA deference to the State's alternative argument. *See* 28 U.S.C. § 2254(d)(2) and (e)(1) (state-court

findings of fact can only be rebutted by clear and convincing evidence).

The State's acquiescence and waiver argument is without merit; nothing in the record supports such a factual finding. In denying Freeman's request to proceed pro se, the trial court explicitly told Freeman that "I will not let you proceed pro se any further." Freeman was under no obligation to reassert his motion or continually object to the court's denial of his motion after the court had clearly denied his request. Once again, *Faretta* affirms why this is so. After *Faretta*'s request was denied and he proceeded to trial with counsel, the Court did not find that Faretta acquiesced to representation by counsel, or that he waived the right to represent himself. *Faretta*, 422 U.S. at 810–11. Accordingly, every other circuit that has encountered such an argument has rejected it. *See Batchelor*, 682 F.3d at 412 (stating that a defendant "was not required, in order to avoid waiver, to add anything to the straightforward request that he had already made plain in writing"); *Buhl v. Cooksey*, 233 F.3d 783, 803 (3d Cir. 2000) (noting that defendant's failure to object to the denial of his request to proceed pro se was a "far cry from vacillation or waiver"); *Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000) (stating that a defendant need not continually reassert his request to proceed pro se in order "to avoid waiver of a previously invoked right to self-representation"); *United States v. Arlt*, 41 F.3d 516, 523 (9th Cir. 1994) ("[O]nce a defendant has stated his request clearly and unequivocally and the judge has denied it in an equally clear and unequivocal fashion, the defendant is under no obligation to renew the motion.").

The trial court's denial of Freeman's unequivocal motion to proceed pro se on the basis that he lacked the necessary experience and abilities to represent himself was contrary to, and an unreasonable application of *Faretta*. In affirming this error on the basis of equivocation, the Illinois Appellate Court reached a conclusion that was also both contrary to, and an unreasonable application of *Faretta*. The State's alternative argument of acquiescence and waiver, which the appellate court did not reach, does not change our analysis. Thus, Freeman's conviction cannot stand.

## III.  CONCLUSION

The district court's judgment is REVERSED and the case is REMANDED with instructions to grant the writ of habeas corpus ordering that Freeman be retried, or promptly released.