**Michael J. JOHNSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9800.**

Court of Appeals of Alaska.

July 25, 2008.

---

**5.** *Nelson v. State,* 68 P.3d 402, 406 (Alaska App. 2003).

Marjorie Allard, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

W.H. Hawley Jr., Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

■ Michael J. Johnson appeals his conviction for felony driving under the influence.[1] He first contends that the evidence presented at his trial was legally insufficient to prove that he was under the influence at

---

1. AS 28.35.030(n).

the time he operated the vehicle (as opposed to later, after the police stopped him).

At trial, Johnson testified that, during the approximately three minutes between the time the police pulled him over and the time they ordered him out of the car, he was surreptitiously taking drinks from a bottle of vodka. Johnson attributed his poor performance on the field sobriety tests and his later breath test result—.173 percent blood alcohol—to these furtive nips inside the car.

■ When a defendant challenges the sufficiency of the evidence to support a criminal conviction, an appellate court is obliged to view the evidence, and all reasonable inferences to be drawn from that evidence, in the light most favorable to upholding the lower court's verdict. In other words, we are to assess the sufficiency of the evidence in this case by first resolving all conflicts and doubts presented by the evidence in favor of the jury's verdict,[2] and then asking whether, viewing the evidence in that light, a reasonable fact-finder could have concluded that the State's case was proved beyond a reasonable doubt.[3]

The police officers who conducted the traffic stop in this case testified that they did not see Johnson drinking anything following the stop. The officer who made the initial contact shined a light into the car after the stop. And all three officers involved in the stop testified that they are always on guard for any suspicious or potentially threatening movements by the occupants of a stopped vehicle—and that they would have responded immediately if they had observed Johnson reaching under the seat.

When we assess the totality of this evidence under the test described above, we conclude that the evidence was sufficient to support the jury's conclusion that Johnson was intoxicated at the time of the traffic stop (as well as three minutes later).

Johnson's remaining points on appeal involve the complaints that he made at his sentencing hearing about his attorney's performance.

At the sentencing hearing, Johnson expressed two complaints about his attorney. First, he complained that his attorney had not attended Johnson's interview with the probation officer who prepared the pre-sentence report. Second, Johnson complained that, acting without Johnson's knowledge or consent, his attorney had asked the court to continue the sentencing hearing for five weeks (from June 12 until July 20). Johnson told Superior Court Judge Phillip R. Volland that he needed a new attorney and (as a consequence) a further continuance of the sentencing hearing, because his current attorney "did [this] without [his] prior approval."

Judge Volland denied Johnson's requests for a further continuance and for a new attorney. The judge found that Johnson's attorney had acted properly in seeking a continuance of the sentencing, even if he had had no chance to consult with Johnson, because the attorney needed time to review the State's addendum to the pre-sentence report. Judge Volland further declared that he "[did not] see that a change in counsel at this point would be to Mr. Johnson's benefit," given the fact that Johnson faced a presumptive term of imprisonment and, thus, the judge's sentencing discretion was quite limited.

■ In this appeal, Johnson argues that he is entitled to re-sentencing because Judge Volland did not adequately investigate the possibility of granting Johnson's request to delay the sentencing hearing so that he could look for a new attorney.

In past decisions, we have indicated that when circumstances suggest a disabling conflict between attorney and client, a judge may be required to investigate and, if the conflict is proved, take action. See, for instance, our unpublished decision in *Weaver v. State*, Alaska App. Memorandum Opinion No. 3308 (December 20, 1995), 1995 WL 17221357.

But the facts of *Weaver* are plainly distinguishable from the facts of Johnson's case. *Weaver* involved claims that, if true, would

**2.** *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981) (citing *Martin v. City of Fairbanks,* 456 P.2d 462, 464 (Alaska 1969)).

**3.** *Helmer v. State,* 608 P.2d 38, 39 (Alaska 1980).

clearly have warranted the appointment of a new attorney. Johnson offered no such claims.

Johnson told Judge Volland that, when he asked his attorney to attend the pre-sentence interview, his attorney replied that he "might be able to ... go." Johnson further told Judge Volland that, when his attorney did not show up for the interview, the probation officer assigned to write the pre-sentence report "[went] ahead ... with the interview without ... [the] presence of [Johnson's] counsel." But Johnson never asserted that he objected to conducting the interview in the absence of his attorney, or that the probation officer insisted on conducting the interview despite Johnson's objection that his attorney was not there.

Moreover, Johnson has not alleged that he was prejudiced by his attorney's absence, and no prejudice is apparent from the record. We note that Judge Volland explicitly gave Johnson the opportunity to dispute any and all facts recited in the pre-sentence report.

■ We now turn to Johnson's second complaint about his attorney's performance: the fact that his attorney asked for a continuance of the sentencing hearing without consulting Johnson.

As explained above, Judge Volland found that Johnson's attorney acted appropriately in requesting the continuance, so that the attorney would have sufficient time to review the State's addendum to the pre-sentence report. Moreover, Johnson has not alleged (much less shown) that he was prejudiced by the five-week delay of the sentencing hearing.

Given this record, Judge Volland could reasonably conclude that Johnson had not raised the kind of grave complaint about his attorney's performance that would have triggered the judge's duty to conduct a more thorough inquiry.

Johnson's final claim on appeal is that Judge Volland erred by failing to more fully explain Johnson's option of representing himself if he was dissatisfied with his attorney.

After Judge Volland denied Johnson's request for a new attorney and a further continuance of the sentencing hearing, the following colloquy took place:

> *Mr. Johnson:* I would like to request if I could, you know, represent myself in this matter, as I could fill in, you know, myself.
>
> *The Court:* Mr. Johnson, have ...
>
> *Mr. Johnson:* I have—you know, I have the paperwork to do the ... [to] reply on the objections on the sentence memorandum here, and ...
>
> *The Court:* Mr. Johnson, ... I'll give you the opportunity to address anything that you think is in error in the pre-sentence report or the addendum, and [the opportunity] to tell me what you think an appropriate sentence is in this case and why. You have the right to do that ... at a sentencing. So [defense counsel] is not the only one who is going to be speaking on your behalf. He'll make the legal arguments, if there [are] any, and [he'll make] suggestions to me. [But] regardless of what he says, I'm going to ask you [personally] what you think, and you can tell me then.
>
> *Mr. Johnson:* Okay.

After Judge Volland clarified these procedural matters, Johnson never renewed his request to represent himself.

■ On appeal, Johnson argues that Judge Volland's remarks (quoted above) led Johnson to believe that he was not entitled to represent himself at sentencing. He asks this Court to remand his case to the superior court for an inquiry into whether he would have preferred to proceed *pro se* at sentencing.

There would be merit to Johnson's request if he had clearly and unequivocally declared his desire to proceed without an attorney.[4] But here, it appears that Johnson was simply "thinking out loud" about this possibility. After Judge Volland explained that Johnson

---

4.  See, e.g., *Gladden v. State,* 110 P.3d 1006, 1009 (Alaska App.2005); *McIntire v. State,* 42 P.3d 558, 560–61 (Alaska App.2002); *Evans v. State,* 822 P.2d 1370, 1374 (Alaska App.1991); *Burks v.* *State,* 748 P.2d 1178, 1182 n. 1 (Alaska App. 1988) (Coats, J., dissenting); *James v. State,* 730 P.2d 811, 814 n. 1 (Alaska App.1987).

would be able to personally address the court regarding the matters that concerned him, Johnson did not renew his request to represent himself.

Johnson's case illustrates the reason why appellate courts hold that a trial judge is not obliged to pursue a criminal defendant's request for self-representation unless that request is clear and unequivocal. As the Ninth Circuit explained in *Adams v. Carroll,* 875 F.2d 1441 (9th Cir.1989), there are two primary rationales for this requirement:

> First, it acts as a backstop for the defendant's right to counsel, by ensuring that the defendant does not inadvertently waive that right through occasional musings on the benefits of self-representation. *See, e.g., Meeks* [*v. Craven* ], 482 F.2d [465,] 467 [ (9th Cir.1973) ] ( [a] defendant cannot waive right to counsel by once stating, "I think I will [represent myself].”). Because a defendant normally gives up more than he gains when he elects self-representation, we must be reasonably certain that he in fact wishes to represent himself. *See Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977) (courts must indulge in every reasonable presumption against waiver of the right to counsel).
>
> [Second, t]he requirement that a request for self-representation be unequivocal also serves an institutional purpose: It prevents a defendant from taking advantage of the mutual exclusivity of the rights to counsel and self-representation. A defendant who vacillates at trial between wishing to be represented by counsel and wishing to represent himself could place the trial court in a difficult position: If the court appoints counsel, the defendant could, on appeal, rely on his intermittent requests for self-representation in arguing that he had been denied the right to represent himself; if the court permits self-representation, the defendant could claim he had been denied the right to counsel. *See Meeks,* 482 F.2d at 468. The requirement of unequivocality resolves this dilem-

ma by forcing the defendant to make an explicit choice. If he equivocates, he is presumed to have requested the assistance of counsel.

*Adams,* 875 F.2d at 1444.

Thus, a trial judge has no duty to fully advise a defendant concerning the right of representation (and the attendant dangers) unless the defendant makes a clear and unequivocal request for self-representation. Moreover, the cases in this area show that even when a request for self-representation appears on its face to be unequivocal, a judge need not conduct a formal inquiry when the record as a whole shows that the seemingly unequivocal request is in fact tentative.

For instance, in *Fields v. Murray,* 49 F.3d 1024 (4th Cir.1995), the defendant wrote a letter to the judge in which he stated that he "[had] no choice left but to dismiss … my coun[sel] and act as my own coun[sel] at the trial." [5] However, other statements in this letter suggested that Fields's real interest lay in personally cross-examining the witnesses against him, not in proceeding *pro se.* And when the court held a hearing to address Fields's concerns, Fields did not ask to represent himself, but rather complained of too little contact with his attorneys.[6] On appeal, the Fourth Circuit ruled that the record as a whole supported the trial judge's conclusion that Fields did not clearly and unequivocally invoke his right to self-representation.[7]

Similarly, in *Cross v. United States,* 893 F.2d 1287 (11th Cir.1990), the court held that even though Cross made the seemingly unambiguous statement, "I want to be allowed to represent myself through this whole trial," the trial judge was not obliged to pursue a full explanation of the right and risks of self-representation—because, in later statements, Cross clarified that what he really wanted was permission to act as co-counsel.[8]

Likewise, in *State v. Carter,* 200 Conn. 607, 513 A.2d 47 (1986), during a complaint about the performance of his public defender, the

---

**5.** *Fields,* 49 F.3d at 1033.

**6.** *Id.*

**7.** *Id.* at 1033–34.

**8.** *Cross,* 893 F.2d at 1291.

defendant told the trial judge, "I am misrepresented, and now I have to represent myself." [9] A few moments later, Carter reiterated, "I'll have to represent myself." [10] But once the judge explained the trial procedures and offered Carter the opportunity for further consultations with his attorney, Carter acquiesced in having the trial proceed with his appointed attorney.[11] On appeal, the Connecticut Supreme Court concluded that the record, viewed as a whole, showed that Carter did not clearly and unequivocally invoke his right of self-representation, but rather simply expressed his dissatisfaction with his appointed counsel and his misunderstanding of trial procedures.[12]

See also *People v. Tena,* 156 Cal.App.4th 598, 67 Cal.Rptr.3d 412 (2007), where the court held that a defendant's comments at his preliminary hearing, "Can I go *pro per,* sir? Your Honor, may I go *pro per?*" were not unequivocal requests for self-representation, given the record as a whole, but rather "impulsive reactions to [the defendant's] frustrated attempts to secure an attorney who would subpoena the witnesses that he desired." [13]

We conclude that Johnson's remarks to Judge Volland about the possibility of self-representation fall within this same category.

Johnson told Judge Volland that he believed there were errors in the pre-sentence report. He complained that his attorney had not been present at the pre-sentence interview, and that his attorney had asked for a continuance of the sentencing hearing without consulting him. Based on these complaints, Johnson first asked Judge Volland for a continuance of the sentencing hearing so he could hire a new attorney. Then, when Judge Volland denied this request, Johnson mentioned the possibility of self-representation: "I would like to request if I could, you know, represent myself in this matter, as I could fill in, you know, myself."

In response, Judge Volland explained that Johnson had the right to speak directly to the court at sentencing to address any errors in the pre-sentence report, and to express his views on what would be an appropriate sentence. This explanation apparently satisfied Johnson's concerns: he responded, "Okay," and he did not renew his request to represent himself.

In other words, Judge Volland could reasonably conclude that Johnson's real desire was not to exercise his right of self-representation, but rather to have the opportunity to personally object to the content of the pre-sentence report and to the State's sentencing recommendations. Given this record, Judge Volland was under no duty to conduct a further, formal explanation of Johnson's right of self-representation (and its attendant risks).

*Conclusion*

The judgement of the superior court is AFFIRMED.

---

9. *Carter,* 513 A.2d at 50.

10. *Id.*

11. *Id.* at 51.

12. *Id.*

13. *Tena,* 67 Cal.Rptr.3d at 419–420.