NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

THOMAS LEONARD MASSEY JR.,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12271
Trial Court No. 3AN-12-12699 CR

O P I N I O N

No. 2622 — November 9, 2018

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Philip R. Volland, and Michael R. Spaan, Judges.

Appearances: Laurence Blakely, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge ALLARD.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Thomas Leonard Massey Jr. was charged with second-degree escape for leaving the halfway house where he had been placed by the Department of Corrections. Prior to trial, Massey requested multiple representation hearings because he was unhappy with his appointed counsel. At the final pretrial representation hearing, Massey asked to waive his right to counsel and to represent himself. The judge presiding over this pretrial hearing told Massey that he would give him time to think about this decision, and that the court would address Massey's self-representation request at the next pretrial hearing. But at the next hearing, when Massey renewed his request to represent himself, the judge did not conduct the promised self-representation inquiry — and when Massey tried to object, the judge would not let him personally address the court.

Later, at the trial call in Massey's case, held in front of a different judge, Massey again tried to renew his request to represent himself. This second judge told Massey (mistakenly) that the first judge had already resolved this issue. When Massey personally protested that this was not the case, the court ignored Massey's protests and Massey's attorney did not pursue the matter further. Massey's case proceeded to a bench trial (with Massey represented by counsel), and Massey was convicted.

In the present appeal, Massey argues that he was denied his right of self-representation. The record shows that Massey clearly and unequivocally invoked his right of self-representation, but he never received the self-representation hearing to which he was entitled. We therefore reverse his conviction.

*Background facts*

On December 2, 2012, Massey was arrested on charges of theft and resisting arrest. Massey could not obtain release on bail, and the Department of Corrections transferred him from the Anchorage jail to the Cordova Center, a halfway

house.  The next day, Massey was reported missing from the Cordova Center.  He was located and arrested four months later, and charged with escape.

The Public Defender Agency was appointed to represent Massey, but Massey became dissatisfied with the agency's representation, and he repeatedly asked for another attorney.  Superior Court Judge Michael L. Wolverton, who presided over the pretrial hearings in Massey's case, denied each of Massey's requests for substitute counsel.

At the final pretrial representation hearing, held on August 4, 2014, after Judge Wolverton again denied Massey's request for a new lawyer, Massey asked, "Can I go pro se?"  When Judge Wolverton asked Massey, "Do you want to represent yourself?"  Massey answered, "Yes.  Yes, Your Honor."

Judge Wolverton told Massey that he would give him some additional time to think about whether he wanted to represent himself.  Massey answered that he wanted to represent himself, and that the court could hold the inquiry right then.  Judge Wolverton told Massey that they would talk about his request for self-representation at the pretrial conference scheduled for two days later, on August 6, 2014.

This pretrial conference was delayed for three weeks, until August 27. When Massey's case was called at this pretrial conference, his attorney told Judge Wolverton that Massey was renewing his request to represent himself.  But instead of taking up Massey's request, as he had promised, the judge ignored Massey's request and instead began questioning the attorneys if they were ready for trial.  Both of the attorneys indicated that they were ready.  Massey tried to personally interject, but was not allowed to speak.

One week later, at a trial call held on September 2 in front of Superior Court Judge Philip R. Volland, Massey's attorney noted that Massey had requested to represent himself, and the attorney told Judge Volland that it was not clear "[whether] Judge

Wolverton ever made a final determination on that." Massey also told Judge Volland that he thought he "was going to be able to represent [him]self," and that he was not yet ready for a trial.

When Judge Volland went to examine the record of the August 4 hearing, he found that it was sealed (because it was a representation hearing). Rather than reviewing the contents of this sealed proceeding, Judge Volland instead relied on the written notations found on the sealing envelope — notations which stated, "Finds no basis, [assistant public defender] to remain as counsel of record."

These notations described Judge Wolverton's ruling that Massey was not entitled to dismiss his public defender and have the court appoint substitute counsel — the ruling that led Massey to ask whether he could represent himself. But Judge Volland misinterpreted the notations: he thought they referred to a ruling by Judge Wolverton denying Massey's request to represent himself.

Based on this mistaken interpretation of the notations, Judge Volland told Massey that Judge Wolverton had already ruled that Massey could not represent himself. Judge Volland made clear that he was not going to reopen that issue.

Massey's attorney did not correct Judge Volland's mistaken understanding of the record. Massey personally tried to alert Judge Volland to his mistake, declaring that he "[had] been waiting for ... [a] judge to decide whether I was going to be able to represent myself." But Judge Volland told Massey that Judge Wolverton had already ruled on his request, that it was too late to change things, and that the Public Defender Agency would remain his attorney.

Massey proceeded to a bench trial before Superior Court Judge Michael R. Spaan, and he was convicted of second-degree escape.

At another hearing prior to his sentencing, Massey complained that he had repeatedly tried to represent himself, and that he had been repeatedly ignored. Judge Spaan told Massey that he had preserved this point for appeal.

Massey now appeals.

*Massey was denied his right to knowingly and intelligently waive counsel and represent himself at his trial*

In *Faretta v. California*, the United States Supreme Court held that criminal defendants have a right under the Sixth Amendment to represent themselves.[1] The right of self-representation is also protected by the Alaska Constitution.[2] In *McCracken v. State*, the Alaska Supreme Court declared that, at the time the Alaska Constitution was enacted, "the right of self-representation was so well established that it must be regarded as a right 'retained by the people.'"[3]

Although criminal defendants have both a right to the assistance of counsel and the right to represent themselves, the right to counsel remains dominant.[4] Thus, courts must provide an indigent defendant with counsel unless the defendant "clearly and unequivocally declare[s] his desire to proceed without an attorney."[5]

---

[1] *Faretta v. California*, 422 U.S. 806, 819 (1975).

[2] *McCracken v. State*, 518 P.2d 85, 91 (Alaska 1974).

[3] *Id.*

[4] *Knix v. State*, 922 P.2d 913, 918 n.6 (Alaska App. 1996).

[5] *Johnson v. State*, 188 P.3d 700, 703-04 (Alaska App. 2008).

If, however, a defendant clearly and unequivocally invokes their right to represent themself, then the court is required to conduct an inquiry to ascertain the defendant's intentions and the defendant's capacity to represent themself.[6]

Before allowing a defendant to give up their right to counsel, the court must ensure that the defendant's waiver of counsel is knowing and intelligent.[7] This includes ensuring that the defendant understands their right to counsel, the important advantages of having counsel, and the dangers and disadvantages of self-representation.[8] The court must also ensure that the defendant is minimally capable of defending themself in a "rational and coherent manner."[9]

Here, the record shows that Massey made clear, unequivocal requests to represent himself, beginning at the August 4, 2014 hearing. At that August 4 hearing, Judge Wolverton promised that he would conduct the required self-representation inquiry at Massey's next pretrial hearing. But this never happened. Instead, whenever Massey tried to raise this issue again, neither Judge Wolverton nor Judge Volland would listen to him.

---

[6] *See James v. State*, 730 P.2d 811, 813-814 (Alaska App. 1987); *McCracken*, 518 P.2d at 91-92; *see also Buhl v. Cooksey*, 233 F.3d 783, 794 (3d Cir. 2000); *United States v. Balough*, 820 F.2d 1485, 1487-88 (9th Cir. 1987).

[7] *James*, 730 P.2d at 813 (citing *Faretta v. California*, 422 U.S. 806, 834 (1975)).

[8] *Shorthill v. State*, 354 P.3d 1093, 1109 (Alaska App. 2015) (citing *James*, 730 P.2d at 813-14).

[9] *James*, 730 P.2d at 813 (citing *McCracken v. State*, 518 P.2d 85, 91 (Alaska 1974)); *see also Shorthill*, 354 P.3d at 1109 (citing *Ramsey v. State*, 834 P.2d 811, 814 (Alaska App. 1992); *Burks v. State*, 748 P.2d 1178, 1180, 1183 (Alaska App. 1988)).

The State concedes that Massey never received the self-representation inquiry that he asked for. However, the State argues that Massey's requests for self-representation were not "clear and unequivocal."

It is true that Massey's requests to represent himself were often intertwined with Massey's statements that he was dissatisfied with his attorney and that he wanted the court to appoint a different lawyer to represent him. Based on this, the State argues that Massey's case is an example of the type of request for self-representation that we described in *Johnson v. State* — an instance where the request for self-representation "appears on its face to be unequivocal," but where "the record as a whole shows that the seemingly unequivocal request is in fact tentative."[10]

We disagree with the State's reading of the record. As we have previously explained, the fact that a defendant makes a request for self-representation only because the court refuses to appoint substitute counsel does not make the request equivocal.[11] Although the record shows that Massey would have preferred to have the court appoint a different attorney to represent him, Massey made it clear that if the court was not going to do that, then Massey would prefer to represent himself, rather than continue with his current lawyer.

We note that Judge Wolverton obviously thought that Massey had made a clear and unequivocal request for self-representation — because the judge promised that he would take up the matter of self-representation at the very next hearing. For reasons

---

[10]   *Johnson v. State*, 188 P.3d 700, 704 (Alaska App. 2008).

[11]   *See Cook v. State*, 2004 WL 719771, at *7 (Alaska App. Mar. 31, 2004) (unpublished) ("Within the range of choices that were legally available, Cook's decision was unequivocal. There was no ambiguity in Cook's waiver of his right to counsel."); *see also State v. Jordan*, 44 A.3d 794, 809 (Conn. 2012) (requesting self-representation as an alternative to substitute counsel does not make request equivocal).

that are not clear, the judge later refused to do so.  But the record is otherwise sufficiently clear that Massey repeatedly tried to assert his right of self-representation and that he tried to alert both Judge Wolverton and Judge Volland that he had never received the self-representation inquiry he had been promised.

Because of this, Massey's case bears little resemblance to the cases relied on by the State in its briefing — cases that all involved defendants who vacillated between their options, or who showed only a passing interest in representing themselves.[12]

Because Massey unequivocally requested to represent himself, he was entitled to a hearing where his intention could be verified, and where his capacity for self-representation could be assessed.  But despite Massey's repeated requests, this self-representation hearing never took place — and, ultimately, Massey was forced to go to trial represented by counsel.  In these circumstances, the superior court's refusal to hold

---

[12]    *See, e.g.*, *Fields v. Murray*, 49 F.3d 1024, 1033-34 (4th Cir. 1995) (defendant sent three different letters to judge, one of which included a request to proceed pro se, but defendant did not renew request at the court hearing which was set to discuss the letters); *Cross v. United States*, 893 F.3d 1287, 1291 (11th Cir. 1990) (despite initial statement that seemed like an unambiguous request for self-representation, defendant's later statements made clear that he only wished permission to act as co-counsel); *State v. Carter*, 513 A.2d 47, 50-51 (Conn. 1986) (ambiguous requests for self-representation not renewed after explanations provided for trial procedures and opportunities given to consult with counsel); *People v. Tena*, 156 Cal. App. 4th 598, 606-08 (2007) (defendant's momentary comments about going "pro per" were, considering the record as a whole, simply "impulsive reactions" based on the defendant's frustrations with his attorney); *Johnson*, 188 P.3d at 703-04 (defendant did not renew request for self-representation after being told he could personally address court at sentencing and his original comment was deemed to be simply "thinking out loud" about the possibility of proceeding pro se).

a hearing on Massey's request for self-representation was a structural error that requires reversal of his conviction.[13]

*Conclusion*

We REVERSE the judgment of the superior court.

---

[13] *See McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) (denial of the right of self-representation is not amenable to harmless error analysis); *Jordan*, 44 A.3d at 811 (holding that the trial court erred by failing to hold a hearing after defendant clearly and unequivocally requested to represent himself, and that error was structural error, requiring automatic reversal of defendant's conviction).