NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| STEVEN MICHAEL HINSHAW,<br><br>             Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>             Appellee. | Court of Appeals No. A-13671<br>Trial Court No. 3AN-04-00166 CR<br><br><br>O P I N I O N<br><br><br>No. 2729 — August 5, 2022 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Philip R. Volland, Judge.

Appearances: Megan R. Webb, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge ALLARD.

The federal and state constitutions grant criminal defendants the right to represent themselves in their criminal trials, no matter how ill-advised such a choice may

seem.[1]  This constitutional right exists "to affirm the dignity and autonomy of the accused."[2]  An erroneous denial of this right is structural error, requiring reversal of a defendant's conviction regardless of prejudice.[3]

In order to invoke their right to self-representation, a defendant must "clearly and unequivocally" declare a desire to proceed without counsel.[4]  In response to such a declaration, a trial court must hold a hearing to ensure that the defendant's waiver of counsel is knowing and intelligent — *i.e.*, that the defendant "understands precisely what [they are] giving up by declining the assistance of counsel."[5]  At the hearing, the trial court must explain in some detail the advantages of proceeding with counsel and the disadvantages of self-representation.[6]  If the defendant nevertheless persists in their desire to proceed *pro se*, the trial court must grant the defendant that right, provided that the defendant is "capable of presenting [their case] in a rational and

---

[1]  *See Faretta v. California*, 422 U.S. 806, 807 (1975); *McCracken v. State*, 518 P.2d 85, 91 (Alaska 1974); *see also* U.S. Const. amend. VI; Alaska Const. art. I, § 11.

[2]  *McKaskle v. Wiggins*, 465 U.S. 168, 176-77 (1984).

[3]  *See Massey v. State*, 435 P.3d 1007, 1011 (Alaska App. 2018); *McKaskle*, 465 U.S. at 177 n.8 ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis.  The right is either respected or denied; its deprivation cannot be harmless.").

[4]  *Massey*, 435 P.3d at 1009-10; *see also Johnson v. State*, 188 P.3d 700, 704 (Alaska App. 2008) ("[A] trial judge has no duty to fully advise a defendant concerning the right of representation (and the attendant dangers) unless the defendant makes a clear and unequivocal request for self-representation.").

[5]  *McCracken*, 518 P.2d at 91-92.

[6]  *Id.*; *see also James v. State*, 739 P.2d 1314, 1316 n.1 (Alaska App. 1987) (quoting the Commentary to the ABA Standards for Criminal Justice to explain the necessary inquiry by the trial court).

coherent manner" and that the defendant is "willing to conduct [themselves] with at least a modicum of courtroom decorum."[7]

In the current case, it is undisputed that Steven Michael Hinshaw "clearly and unequivocally" invoked his right to self-representation. It is also undisputed that Hinshaw was competent to proceed *pro se* and that he was capable of presenting his case in a rational and coherent manner without being disruptive. The trial court nevertheless denied Hinshaw's request to represent himself based on the trial court's concern that Hinshaw did not "appear to appreciate the significance of the tasks and issues he faces at trial." For the reasons explained in this opinion, we conclude that this was error requiring reversal of Hinshaw's convictions.

*Factual and procedural background*

In 2004, a grand jury indicted Hinshaw for first-degree murder and other related felony charges for shooting into a passing car and killing the driver.[8]

Initially, the Public Defender Agency was appointed to represent Hinshaw. However, the Public Defender Agency was later allowed to withdraw based on a conflict, and the Office of Public Advocacy was appointed as Hinshaw's counsel. Hinshaw was subsequently represented by a series of different attorneys who kept replacing each other for various reasons. In November 2005, almost two years after the charges were initiated, another assistant public advocate entered his appearance in the case.

---

[7] *McCracken*, 518 P.2d at 91-92; *see Israel v. State*, 2011 WL 12710297, at *1 (Alaska App. June 29, 2011) (unpublished).

[8] The underlying facts of the case are described in our unpublished memorandum from Hinshaw's first appeal. *See Hinshaw v. State*, 2010 WL 200840 (Alaska App. Jan. 20, 2010) (unpublished).

Hinshaw became very dissatisfied with this attorney's representation, and while his criminal case was still ongoing, he filed a civil lawsuit alleging legal malpractice by the defense attorney. The civil lawsuit was later dismissed on procedural grounds.[9]

The trial court held a series of representation hearings to address Hinshaw's request for a different attorney. Ultimately, the trial court did not find good cause to remove the defense attorney.

On May 23, 2006, Hinshaw filed a motion to proceed *pro se*. In an accompanying affidavit to the motion, Hinshaw asserted that he had "no working relationship" with his attorney and that there were a "multitude of differences" between them. According to Hinshaw, the defense attorney had refused "to consider matters that are important to [his] case." Hinshaw concluded, "I cannot and will not, under the circumstances go to trial with my life at stake with [the defense attorney], I am forced to proceed *pro se*."

As required by law, the trial court held a hearing on Hinshaw's motion to proceed *pro se*.[10] Because this appeal turns on what happened at this hearing, we will describe the hearing in detail.

---

[9] Under Alaska law, a criminal defendant cannot file a legal malpractice case against their criminal attorney unless they have been convicted at trial and then had their conviction reversed through post-conviction relief proceedings. *See Shaw v. State, Dep't of Admin., Pub. Def. Agency*, 816 P.2d 1358, 1360 (Alaska 1991).

[10] *See Massey v. State*, 435 P.3d 1007, 1010 (Alaska App. 2018); *McCracken*, 518 P.2d at 91; *see also* 3 *ABA Standards for Criminal Justice* § 6-3.6(a) & cmt. at 57-61 (Approved Draft 2000) (explaining a trial court's necessary inquiry when a defendant wishes to proceed *pro se*).

*The representation hearing*

At the beginning of the hearing, the trial court clarified with Hinshaw that Hinshaw was seeking to represent himself regardless of whether his attorney was dismissed as counsel. Hinshaw replied, "Regardless." The court then explained in detail the advantages of having counsel and the disadvantages of proceeding *pro se*.

First, the trial court described counsel's pretrial responsibilities, which include formulating a case strategy, filing motions, and negotiating for a pretrial disposition. The court stressed that counsel had specialized training in these areas. Hinshaw affirmed that he understood these pretrial responsibilities and that his attorney had experience handling these matters.

The trial court then detailed an attorney's function at trial, including jury selection, offering and objecting to evidence, cross-examining witnesses, suggesting jury instructions, making opening and closing statements, and filing appropriate motions. Hinshaw acknowledged that his attorney had been specifically trained for these responsibilities and that he would lose the benefit of his attorney's experience and training if he proceeded *pro se*.

In response to the trial court's questions about Hinshaw's knowledge of the Alaska Rules of Evidence, Hinshaw stated that he had "researched" the rules of evidence that pertained to his case. Hinshaw was able to name five rules of evidence that applied to his case and recognized that he needed to learn more. Hinshaw conceded that he did not know all of the exceptions to the hearsay rule.

Hinshaw acknowledged that cross-examination was a very specific "talent and art" and that there were "tricks to the trade" that he did not know. Hinshaw also acknowledged that he had never cross-examined a witness before.

Hinshaw acknowledged that he had never prepared jury instructions or made arguments to a jury, that his attorney was trained to do so, and that he would not

have the benefit of that training and experience if he proceeded *pro se*. Hinshaw said that he intended to learn as he went along and was "continuing to educate [him]self."

The court then repeated these same warnings:

> *The Court*: Do you understand that there are particular rules and procedures during the trial, not just ones that apply to pretrial practice and evidence, but actually to how a trial is conducted?
>
> *Mr. Hinshaw*: Yes. I . . .
>
> *The Court*: Do you understand that your lawyer knows about them and you don't?
>
> *Mr. Hinshaw*: I understand that. And I understand that a lot of that stuff comes with experience, I do.
>
> *The Court*: Do you understand that he knows and is well versed in the law and the legal implications of the law under which you've been charged?
>
> *Mr. Hinshaw*: Yes, I understand that.

Hinshaw understood that his attorney had "been an attorney for some time," had obtained a degree, and "had to pass the Alaska bar," which gave "him the information that he needs." He also acknowledged that if he went to trial without an attorney, he would be going against a prosecutor who was far more skilled than he was.

The trial court then turned to the disadvantages of self-representation and asked Hinshaw if he understood that he might do a poor job representing himself because of his lack of experience. Hinshaw indicated that he understood. Hinshaw also recognized that, because of his lack of legal training, he might fail to make appropriate objections. He showed awareness of the fact that he would not be able to raise an objection on appeal if it was not raised in the trial court.

The trial court then asked Hinshaw whether he understood that he might make the wrong tactical decisions during trial because of his lack of training and

experience. Hinshaw responded that he would take his time and that "[i]f I don't understand how to proceed or where to go next, I need to research." Hinshaw also conceded that the trial court would be unable to help him and said that the court was "like a coach on a basketball game" who remained "on the sideline" and was supposed to be "fair, impartial, and unbiased."

The trial court again emphasized the likelihood that Hinshaw would make errors if he proceeded *pro se*:

> *The Court*: Do you understand that because of the things I just mentioned might happen, you might screw up argument, you might screw up jury selection, you might screw up the case because you make the wrong decision, you might fail to object to the evidence, that — that it's likely to mean it is more likely than not that you will be convicted at trial?

> *Mr. Hinshaw*: I understand what you're saying, and I understand what I'm — what I'm facing, yes.

> *The Court*: I want you to understand the consequences. If you proceed on your own, it is more likely than not, you will be convicted.

> *Mr. Hinshaw*: I'm familiar with the saying.

The court then repeated its opinion that Hinshaw was "more likely than not" going to be convicted of murder if he proceeded without a lawyer, and he asked Hinshaw if he understood. Hinshaw stated, "No, I don't understand that," disagreeing with the court's opinion of his chances at trial.

Following this exchange, the court began asking Hinshaw about his education and experience with the criminal justice system. Hinshaw stated that he had a G.E.D. and attended high school with a 4.0 grade point average. Hinshaw admitted that this would be the first case in which he went to trial. He also acknowledged that the

resources he would have access to in his pretrial facility were "severely lacking." He stated that he would have access to a computer with no printer, and access to the law library for about an hour a day, Monday through Friday.

When questioned, Hinshaw was able to tell the court the maximum penalty he faced for each charge.

The trial court then asked Hinshaw *why* he wanted to represent himself. Hinshaw told the court he wanted to represent himself because "I feel as long as I've been in the pretrial process, nothing's happened. There [were] motions filed. What were the rulings? Never received a single one." He also was displeased with being represented by "three different attorneys" and having "little to no notice" that the attorneys would resign. The trial court asked if he knew that he would waive claims to ineffective assistance of counsel if he proceeded *pro se*. Hinshaw initially said he did not understand. After the court explained this legal concept further, Hinshaw indicated that he understood.

Hinshaw explained that he was dissatisfied with his current attorney. He disagreed with the attorney's decision not to interview witnesses or investigate further and maintained that the attorney did not provide him with copies of the evidence. Ultimately, he felt that the attorney did not want him to play "an intricate part in [his] own defense." Hinshaw felt that the defense attorney just wanted him "to be there so they can do what they want to do." He stressed, "He's not the one that's left to be held responsible. I am. I'm in here. I'm the one that has to go to jail. If they come back and say, guilty, I'm the one that has to do the time."

When the court said it seemed like Hinshaw wanted to represent himself because he was "mad" at counsel, Hinshaw asserted:

> No, that's not why. I don't trust them. I don't feel — I don't
> — I don't feel not — there has not been anything done to

show me that they're worthy to defend me. [If] I had a competent attorney or one that wasn't negligent or one that wasn't undercutting all his efforts, I'd be more than willing to go to trial.

Hinshaw noted that he had felt comfortable with one of his prior counsel, but he now felt that things were not getting done on his behalf. He stated that he understood the gravity of trial: "It's not because I'm upset. Yeah, I'm — I'm nervous. I'm tense. It — this is the rest of my life we're dealing with here. [I] understand it all." He continued, "I want to be cautious. I want to take the necessary, you know, the means necessary — the steps. All that. I want to make sure that I have a say so. I'm not closed to comment. I — I don't — I listen to what you tell me. I listen to what everybody tells me, but I have an independent judgment of my own."

The court then asked the prosecutor to explain what the trial likely would involve. The prosecutor stated that she anticipated a trial of three weeks with jury selection and approximately fifteen to twenty witnesses by the State. She said that there would be two experts who would likely testify — the medical examiner, to discuss the cause of death, and a criminologist who examined bullet fragments found in the car — as well as crime scene detectives who conducted the preliminary investigation.

The trial court asked the defense attorney if he had a position on Hinshaw's motion. The defense attorney acknowledged that Hinshaw had a constitutional right to represent himself but noted that he had "attempted to explain to [Hinshaw] that this is sheer foolishness." The attorney told a story about a previous client who had proceeded *pro se* with the attorney as his legal advisor. At trial, the victim testified and could not identify the defendant. Contrary to the defense attorney's advice, the defendant decided to cross-examine the victim. After hearing the defendant's voice and mannerisms, the victim was able to identify the defendant. The defendant is now serving life in prison.

The defense attorney stressed, "And I hope that Mr. Hinshaw's heard this story, and I hope that he takes it to heart."

The court noted that the defense attorney's story was "a good illustration of one of the risks that you run here." The court again asserted that "if you're untrained in the law and in the procedure, which you are, and you get up there and start opening your mouth, you may be — you may start implicating yourself in front of the jury and start convicting yourself." Hinshaw responded that he appreciated this: "I understand that's a possible consequence and the result of any action I take. Yes, I do, very clearly and well aware of it. I understand that." Hinshaw also distinguished his case from the defense attorney's previous client. He noted that they had different criminal histories and that there was not the same potential issue related to his identification.

Hinshaw indicated that he was aware of the case's complexity and that there were "a number of things I have never seen. Things I don't have. Things that I need and I — I have to see. Things I have to know about beforehand not after and not during." But, as he stated, "I don't need to sit back and not have a part of my defense. It's my right to remain silent. It's — it's my right to make the State prove everything beyond a reasonable doubt. That is my right. I understand that."

Hinshaw again stated that he had issues with his attorney. He questioned whether his attorney's behavior stemmed from his "personal opinions and assumptions" about Hinshaw. Hinshaw concluded,

> [O]bviously, the impression I'm getting from everybody in this courtroom right now is that my lack of education or whatever, my age, my lack of experience, doesn't make me an intelligent individual. I think you all understand I can speak and I can talk. I know how to be patient. I'll deal with the stuff as it comes.

At this point, the defense attorney asked about the items Hinshaw believed the attorney had not provided. Hinshaw replied that he wanted "crime scene photographs" and evidence of "gunshot residue testing," among other things. The attorney replied that he would provide the evidence.

Hinshaw noted that the real issue was that the defense attorney only volunteered this information "after three years," a civil lawsuit against him, and a *pro se* motion. In response, the court said it did not "care how much time has elapsed," as the attorney was now offering to provide the information.

When Hinshaw asked the court how "comfortable" it felt with the quality of the defense attorney's representation, the court responded that it was "more worried about" Hinshaw "making a decision to represent [himself] that might end up being a horrendous mistake." Hinshaw replied that he did not "plan on making any mistakes." The court then stated, "That's what I'm afraid of. You don't plan on making any mistakes." Hinshaw stated that he planned on succeeding because a person does not "plan to fail." At that point, the court indicated that it would take the matter under advisement.

The court then asked the prosecutor if there were any areas of inquiry it forgot to cover. The prosecutor noted that she had a checklist and that the court had been "very comprehensive." The prosecutor also reminded the court to make specific findings in its decision.

The court scheduled a pretrial conference and ordered the defense attorney to provide Hinshaw with discovery as well as copies of pleadings and court orders that had been filed.

Before ending the hearing, the trial court asked Hinshaw how he planned to conduct an investigation of the crime scene if he proceeded *pro se* given his incarceration. Hinshaw intended to "[h]ire experts and investigators." During this

exchange, the State interjected and asked how Hinshaw planned to pay for an expert. Hinshaw did not realize that would be an issue.

The defense attorney then asked the court to clarify its position on the disclosure of certain confidential records. The attorney explained that he was not permitted to provide copies to Hinshaw under Alaska Criminal Rule 16 (the rule governing discovery in criminal cases), but he could sit with Hinshaw to review the records. The attorney stated that the "issue has been Mr. Hinshaw won't come out of his cell to see me." Hinshaw explained that the real issue was the representation and that this was "just a symptom of the problem."

The trial court again declared it would take the matter under advisement and concluded the hearing.

### *The trial court's order denying Hinshaw's request to proceed pro se*

A few days later, the trial court issued a short written order, denying Hinshaw's motion to proceed *pro se*. The trial court found that "Hinshaw understands the role of counsel before trial, during trial, and in post-trial proceedings." The court also found that "Hinshaw recognizes that he faces serious charges in this case and that his conviction could result in a life-time sentence." The court acknowledged that Hinshaw exhibited "a minimal understanding of criminal procedure" and could "express his positions clearly." The court nevertheless concluded that it was "not convinced that Hinshaw 'knows what he is doing and his choice is made with eyes open.'"[11] The court further stated:

> The court is not satisfied that Hinshaw fully understands what he is giving up by proceeding without a lawyer. Hinshaw's

---

[11] The court drew this language from *McCracken*, 518 P.2d at 89 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

motion appears to have been made out of frustration with his current and former counsel, and his inability to discharge counsel. Hinshaw does not recognize that self-representation in a case of this complexity significantly increases his chance of conviction. Nor does Hinshaw appear to appreciate the significance of the tasks and issues he faces at trial.

Hinshaw moved for reconsideration, asserting that he understood "the increased risk of conviction due to self-representation" and that he still wanted to proceed *pro se*.

The trial court denied the motion for reconsideration in a summary order.

*Hinshaw's trial and direct appeal*

Hinshaw proceeded to trial with the same defense attorney representing him. Hinshaw was charged with one count of first-degree murder,[12] two counts of second-degree murder,[13] one count of first-degree weapons misconduct,[14] three counts of assault in the third degree,[15] and one count of tampering with physical evidence.[16] At trial, the jury acquitted Hinshaw of the murder charges but convicted him of the lesser

---

[12] AS 11.41.100(a)(1)(A).

[13] AS 11.41.110(a)(1)-(2) & AS 11.16.110.

[14] AS 11.61.190(a)(2) & AS 11.16.110.

[15] AS 11.41.220(a)(1)(A) & AS 11.16.110.

[16] AS 11.56.610(a)(1).

included offense of manslaughter.[17]  The jury also convicted Hinshaw of two counts of third-degree assault and the evidence tampering charge.[18]

The trial court sentenced Hinshaw to consecutive sentences of 5 years for the manslaughter charge, 2 years for each of the assault charges, and 2 years for the tampering charge, for a composite sentence of 11 years to serve.

Hinshaw appealed his convictions to this Court.  Hinshaw's appellate attorney raised only one issue, challenging the trial court's ruling on a pretrial motion to suppress.  She did not challenge the trial court's denial of Hinshaw's motion to represent himself.  This Court affirmed the judgment in an unpublished memorandum opinion.[19]

*Hinshaw's post-conviction relief application*

Following his direct appeal, Hinshaw filed an application for post-conviction relief, alleging that his appellate counsel was ineffective for failing to challenge the trial court's denial of his request to represent himself.

To prevail on this claim, Hinshaw was required to prove by clear and convincing evidence:  (1) that the proposed additional issue was significantly stronger than the issue raised in the appeal; (2) that the appellate attorney had no valid tactical reason for failing to include this particular issue; and (3) that, if the proposed issue had

---

[17]  AS 11.41.120.

[18]  The jury acquitted Hinshaw of one count of third-degree assault and the first-degree weapons misconduct charge.

[19]  *Hinshaw v. State*, 2010 WL 200840, at *1-2 (Alaska App. Jan. 20, 2010) (unpublished).

been included, there is a reasonable possibility that the outcome of the appeal would have been different.[20]

In support of his claim, Hinshaw submitted the transcript of the representation hearing and an affidavit from his appellate counsel. In her affidavit, the appellate counsel stated that she inadvertently failed to investigate the self-representation claim. She also opined that Hinshaw was capable of representing himself.

The State moved to dismiss Hinshaw's application, arguing that it failed to state a *prima facie* case for relief. The superior court agreed and dismissed Hinshaw's application on its pleadings.

Hinshaw appealed the dismissal to this Court. We reversed the superior court's order, and remanded for further proceedings.[21] In our decision, we noted that the transcript of the representation hearing suggested that the self-representation issue was considerably stronger than the suppression issue raised in Hinshaw's direct appeal.[22] We also found that the appellate attorney's affidavit suggested that she did not have a tactical reason for failing to raise the self-representation issue.[23] Lastly, we held that Hinshaw was not required to show that the trial court's ruling actually prejudiced him because an

---

[20] *See Coffman v. State*, 172 P.3d 804, 813 (Alaska App. 2007) (noting that "the ultimate question is whether the attorney's choice of issues was so ill-considered that it fails to demonstrate the minimal competence required of criminal law practitioners").

[21] *Hinshaw v. State*, 2018 WL 1357350, at *4 (Alaska App. Mar. 14, 2018) (unpublished).

[22] *Id.* at *2-3.

[23] *Id.* at *3-4.

erroneous denial of the right to self-representation is structural error, requiring automatic reversal without a showing of prejudice.[24]

On remand, the superior court held a hearing and later issued an order finding that Hinshaw's appellate attorney had been ineffective and that Hinshaw was therefore entitled to a new appeal that challenged the trial court's ruling on his motion for self-representation.

This appeal followed.

*Why we conclude that the trial court erred in denying Hinshaw's request to represent himself*

The parties agree that the question before us in this appeal is whether the trial court erred when it denied Hinshaw's request to represent himself. The parties disagree, however, regarding the standard of review that should apply to the trial court's ruling.

Hinshaw asserts that the standard of review should be *de novo* because whether a defendant's waiver of counsel is knowing and intelligent is generally treated as a mixed question of fact and law.[25] The State argues that the standard of review

---

[24] *Id.* at *4.

[25] *See McIntire v. State*, 42 P.3d 558, 561 (Alaska App. 2002) ("A review of Alaska cases establishes that this court independently reviews the record to determine whether the defendant knowingly and intelligently waived counsel; we will not defer to the trial court."); *Evans v. State*, 822 P.2d 1370, 1374-76 (Alaska App. 1991); *James v. State*, 739 P.2d 1314, 1316 (Alaska App. 1987); *see also Henry v. State*, 2021 WL 3909975, at *3 (Alaska App. Sept. 1, 2021) (unpublished) ("This Court independently reviews the record to determine if a waiver of counsel was knowing and intelligent."); *Gladden v. State*, 110 P.3d 1006, 1009 (Alaska App. 2005) ("We independently review the record to determine if a waiver of counsel was knowing and intelligent.").

should be abuse of discretion, pointing to cases in which we have used that standard to review a trial court's ruling denying a defendant's request to represent themselves.[26]

Our case law on this question is mixed. The State is correct that there are cases where we have used an abuse of discretion standard to review a trial court's denial of a defendant's request to represent themselves.[27] The Alaska Supreme Court has also used an abuse of discretion standard when reviewing the denial of a request for self-representation in a child-in-need-of-aid case.[28]

But, as Hinshaw points out, these cases have often involved the trial court denying a defendant their right to self-representation on grounds other than whether their waiver of counsel was knowing and intelligent. In *Falcone v. State*, for example, the trial court denied the defendant's request to represent himself because the court found that the defendant was not capable of presenting his case in a coherent fashion and was incapable of conforming to the orderly procedures of the court.[29] Likewise, in *Barry H. v. State*,

---

[26] *See, e.g.*, *Falcone v. State*, 227 P.3d 469, 473 (Alaska App. 2010); *Ramsey v. State*, 834 P.2d 811, 815 (Alaska App. 1992); *Gargan v. State*, 805 P.2d 998, 1000-01 (Alaska App. 1991); *see also Bourdon v. State*, 2018 WL 3933557, at *3 (Alaska App. Aug. 15, 2018) (unpublished); *Tix v. State*, 2011 WL 2437680, at *5-6 (Alaska App. June 15, 2011) (unpublished).

[27] *See Falcone*, 227 P.3d at 473; *Ramsey*, 834 P.2d at 815.

[28] *Barry H. v. State, Dep't of Health & Soc. Servs.*, 404 P.3d 1231, 1235 (Alaska 2017). We note, however, that the Alaska Supreme Court has never squarely held there is a constitutional right to self-representation in these proceedings. *See Matthew H. v. State Dep't of Health & Soc. Servs.*, 397 P.3d 279, 283 n.8 (Alaska 2017).

[29] *Falcone*, 227 P.3d at 471-72.

the trial court denied a parent's request to represent himself based on evidence that he was incapable of comporting himself with a "modicum of courtroom decorum."[30]

We note that the question of the proper standard of review is further complicated by the fact that the right to self-representation is a federal constitutional right. Federal courts have primarily treated the question as a mixed question of law and fact or otherwise applied *de novo* review[31] — except for cases where the request is untimely, which are reviewed for an abuse of discretion.[32] However, because we conclude that the outcome in this case would be the same regardless of what standard of review applies, we need not resolve this question of law in this case.

Here, the parties agree that Hinshaw was competent to represent himself and that he was capable of presenting his case in a coherent fashion without being disruptive. The only dispute is whether Hinshaw's waiver was knowing and intelligent — *i.e.*, whether Hinshaw understood "precisely what he [was] giving up by declining the assistance of counsel."[33] The trial court concluded that, although Hinshaw understood the role of counsel and the advantages of proceeding with counsel, he did not really understand the *disadvantages* of proceeding *pro se* — *i.e.*, according to the trial court,

---

[30]   *Barry H.*, 404 P.3d at 1235-36.

[31]   *See United States v. Balsiger*, 910 F.3d 942, 951-52 (7th Cir. 2018); *United States v. Turner*, 897 F.3d 1084, 1102 (9th Cir. 2018); *United States v. Mesquiti*, 854 F.3d 267, 271 (5th Cir. 2017); *United States v. Conklin*, 835 F.3d 800, 801-02 (8th Cir. 2016); *United States v. Kosow*, 400 F. App'x 698, 700 (3d Cir. 2010); *United States v. Garey*, 540 F.3d 1253, 1268 (11th Cir. 2008); *United States v. Owen*, 407 F.3d 222, 225 (4th Cir. 2005); *United States v. Hughes*, 191 F.3d 1317, 1323 (10th Cir. 1999); *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938).

[32]   *See Robards v. Rees*, 789 F.2d 379, 384 (6th Cir. 1986) (reviewing, for abuse of discretion, denial of request for self-representation when request made on day of trial).

[33]   *See McCracken v. State*, 518 P.2d 85, 91-92 (Alaska 1974).

"Hinshaw does not recognize that self-representation in a case of this complexity significantly increases his chance of conviction."

But the fact that Hinshaw did not fully accept the trial court's opinion that it would be a bad idea for him to represent himself is not a ground on which his constitutional right to self-representation could be denied. As already noted, the constitutional right to self-representation exists notwithstanding the fact that it is almost always an ill-advised or foolish choice.[34] Unlike many of the other constitutional rights held by criminal defendants, the constitutional right to self-representation is not grounded in concerns about a fair trial. Instead, it is grounded in principles related to "the autonomy of the individual" and "freedom of choice."[35] As the United States Supreme Court explained in *Faretta*:

> The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."[36]

Indeed, Hinshaw directly echoed these sentiments at the self-representation hearing, explaining that he wanted to represent himself because "[the defense attorney]'s not the

---

[34]   *See, e.g.*, *James v. State*, 730 P.2d 811, 814 n.1 (Alaska App. 1987) ("Except in the most unusual circumstances, a trial in which one side is unrepresented by counsel is a farcical effort to ascertain guilt." (quoting 1 *ABA Standards for Criminal Justice* § 6-3.6 cmt. at 6.39 (2d. ed. 1982))).

[35]   *McCracken*, 518 P.2d at 91; *see also McKaskle v. Wiggins*, 465 U.S. 168, 176-77 (1984) ("The right to appear *pro se* exists to affirm the dignity and autonomy of the accused . . . .").

[36]   *Faretta v. California*, 422 U.S. 806, 834 (1975).

one that's left to be held responsible. I am. I'm in here. I'm the one that has to go to jail. If they come back and say, guilty, I'm the one that has to do the time."

Because a defendant's decision to waive counsel and self-represent is so often a bad one, there are procedures that must be followed before a defendant's motion to proceed *pro se* can be granted.[37] As already explained, when a defendant clearly and unequivocally declares their desire to proceed *pro se*, the trial court must hold a self-representation hearing in which the trial court describes the benefits of proceeding with counsel and the dangers of self-representation "in some detail."[38] The purpose of this hearing is to ensure that the defendant's decision to waive their constitutionally protected right to counsel is a knowing and intelligent one. It is also to ensure that the defendant is "minimally capable of presenting their case in a coherent fashion" and "capable of conducting their defense without being unusually disruptive."[39]

These procedures were followed in this case. The trial court's explanations of the benefits of counsel and the dangers of self-representation were lengthy and detailed, and the hearing took nearly an hour to complete. Hinshaw's responses to the trial court's questions were coherent and intelligent. Hinshaw repeatedly demonstrated

---

[37] *See Oviuk v. State*, 180 P.3d 388, 390 (Alaska App. 2008) ("A defendant who chooses to represent himself or herself takes on a difficult task. And, before a judge allows a defendant to exercise the right of self-representation, the judge must first inform the defendant of the dangers of self-representation and must explain the advantages of the assistance of counsel.").

[38] *McCracken*, 518 P.2d at 91-92; *see also Iowa v. Tovar*, 541 U.S. 77, 88-89 (2004) (noting that "before a defendant may be allowed to proceed *pro se*, he must be warned specifically of the hazards ahead").

[39] *Oviuk*, 180 P.3d at 390 (quoting *Lampley v. State*, 33 P.3d 184, 189 (Alaska App. 2001)).

an understanding of what the trial court had explained to him, even if Hinshaw did not always agree with the trial court about the wisdom of his decision to proceed *pro se*.

On appeal, the State points to places in the record where Hinshaw expressed what was likely an unrealistic assessment of how well he would be able to represent himself. For example, when the trial court stated that it was worried that Hinshaw representing himself would be "a horrendous mistake," Hinshaw replied that "I don't plan on making any mistakes. I plan on . . . succeeding." Hinshaw then followed this statement with the reasonable observation that a person does not "plan to fail." Indeed, if the only people who were allowed to represent themselves were people who *planned* on failing, it is difficult to see how the right to self-representation would ever have any practical meaning. Disagreeing with the trial court about the wisdom of proceeding *pro se* does not automatically mean that a defendant is not knowingly and intelligently waiving their right to counsel. It may, in some circumstances, suggest that the defendant is delusional and incapable of proceeding *pro se*, but it should not be used as conclusive proof that the defendant has failed to execute a knowing and intelligent waiver of counsel when the record affirmatively shows otherwise.

This point of law is made clear in a number of federal cases, including cases where the federal courts have reversed state courts under facts very similar to those presented here. In *Imani v. Pollard*, for example, the Seventh Circuit granted federal habeas relief to a state prisoner, holding that the Wisconsin Supreme Court's affirmance of the trial court's denial of his request for self-representation was "contrary to and an unreasonable application of clearly established federal law as determined by United States Supreme Court decisions . . . ."[40] In *Imani*, the trial court denied the defendant's request to proceed *pro se*, in part, because it found that Imani did not have a "sufficiently

---

[40]    *Imani v. Pollard*, 826 F.3d 939, 942 (7th Cir. 2016).

rational basis" to justify his decision. The trial court described Imani's decision to proceed *pro se* as "a flippant short term or immature decision" that was driven by his attorney's loss of a suppression motion.[41] The Wisconsin Supreme Court later affirmed this ruling.[42]

On federal habeas review, the Seventh Circuit criticized the state courts for "requir[ing] Imani to persuade the trial judge that he had a good reason to choose self-representation."[43] The Seventh Circuit pointed out that "a defendant's reason for choosing to represent himself is immaterial" and "[d]efending *pro se* will almost always be foolish, but the defendant has the right to make that choice, for better or worse."[44] As the Seventh Circuit explained:

> Only in rare cases will a trial judge view a defendant's choice to represent himself as anything other than foolish or rash. A judge does not violate a defendant's Sixth Amendment rights by explaining the risks to the defendant in detail and then giving him time to think it over before the defendant (but not the judge) makes the final decision. . . . But in the end a competent defendant has a constitutional right to represent himself even if the judge thinks the defendant has no good reason to do so. It is the trial judge's job to make sure the defendant makes that choice with open eyes. Nothing in *Faretta* or its progeny allows the judge to require the defendant to prove he is making the choice for a reason the judge finds satisfactory.[45]

---

[41] *Id.*

[42] *Id.* at 943.

[43] *Id.* at 944.

[44] *Id.* (citing *Faretta v. California*, 422 U.S. 806 (1975)).

[45] *Id.* at 945; *see also Oviuk v. State*, 180 P.3d 388, 391 (Alaska App. 2008) (holding that
(continued...)

The Ninth Circuit made a similar point in *United States v. Arlt*.[46]  In that case, the Ninth Circuit focused on the depth and breadth of the self-representation inquiry, noting that the district judge "vigorously warned Arlt about the dangers of self-representation," particularly in a complex conspiracy case, "explicitly told Arlt that the *pro se* motion he had filed made clear that his legal skills were wholly inadequate," and "stated quite plainly that Arlt would not be successful at trial without an attorney to represent him."[47]  After reviewing the record, the Ninth Circuit concluded, "There is no indication on the record that Arlt was not capable of comprehending the judge's explanations or that he did not actually understand the consequences of his decision."[48] As the court explained, "[T]he mere fact that Arlt did not heed the district judge's warning does not indicate that his waiver was uninformed or unintelligent, particularly since Arlt expressly indicated that he understood the district judge's warnings and was not deterred by them."[49]

Here, as in *Imani* and *Arlt*, the record indicates that Hinshaw was capable of understanding the dangers of self-representation and the benefits of counsel, and he repeatedly asserted that he *did* understand the trial court's warnings regarding what he would be giving up if he proceeded *pro se*.  In contrast, the trial court's conclusion that, notwithstanding these verbal assurances, Hinshaw did not "fully understand" what he

---

[45]  (...continued)
the fact that the defendant would be shackled during trial did not, standing alone, justify the trial court's denial of defendant's request to represent himself, as the defendant "must be given the choice whether to persist in self-representation despite . . . potential prejudice").

[46]  *United States v. Arlt*, 41 F.3d 516, 521 (9th Cir. 1994).

[47]  *Id.*

[48]  *Id.*

[49]  *Id.*

was giving up by proceeding without counsel is not supported by the record and appears to be based on a standard of "knowing and intelligent" waiver that would be impossible for any defendant to meet.[50]

The trial court's reliance on the fact that Hinshaw's motion "appears to have been made out of frustration with his current and former counsel and his inability to discharge counsel" was also misguided. As the federal courts have emphasized, a defendant does not need to prove to the trial court that they have a "good reason" for proceeding *pro se* in order to knowingly and intelligently waive their right to counsel.[51] Moreover, the law is clear that the fact that a defendant makes a request for self-representation only because the court refuses to appoint substitute counsel does not make the request equivocal or the waiver of counsel involuntary.[52]

In the seminal case of *Faretta*, the record "affirmatively show[ed] that Faretta was literate, competent, and understanding, and that he was voluntarily exercising

---

[50] *See Burks v. State*, 748 P.2d 1178, 1182-83 (Alaska App. 1988) (Coats, J., dissenting) ("The trial judge should attempt to discourage a defendant from representing himself. If he insists, however, the defendant must be allowed to represent himself if he is able to knowingly and intelligently waive his right to counsel and has certain minimum competence to conduct a defense."); *see also Falcone v. State*, 227 P.3d 469, 472 (Alaska App. 2010) ("The right of self-representation may be restricted only in narrow circumstances 'in order to prevent a perversion of the judicial process.'" (quoting *McCracken v. State*, 518 P.2d 85, 91 (Alaska 1974))).

[51] *Imani v. Pollard*, 826 F.3d 939, 944-45 (7th Cir. 2016); *Faretta v. California*, 422 U.S. 806, 834-35 (1975).

[52] *See Massey v. State*, 435 P.3d 1007, 1010 (Alaska App. 2018); *see also State v. Jordan*, 44 A.3d 794, 809 (Conn. 2012) (requesting self-representation as an alternative to substitute counsel does not make request equivocal); *Moore v. Haviland*, 531 F.3d 393, 402 (6th Cir. 2008) ("Moore's request to proceed *pro se* was no less voluntary because it was contingent on the denial of other options that he might also find palatable.").

his informed free will."[53]  Because the record in Hinshaw's case shows the same, we conclude that the trial court erred when it denied Hinshaw's motion to represent himself.

*Conclusion*

For the reasons explained here, we REVERSE Hinshaw's convictions and REMAND this case to the superior court for further proceedings consistent with this opinion.  We note that double jeopardy has attached to the acquittals, and any retrial will therefore be limited to the crimes for which Hinshaw was previously convicted.

---

[53]  *Faretta*, 422 U.S. at 835.